**STATE of Minnesota, Respondent,**

v.

**Michael W. PATRICELLI, Appellant.**

**No. CX–83–263.**

Supreme Court of Minnesota.

Oct. 26, 1984.

C. Paul Jones, Public Defender, Ronald E. Hunter, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Norman B. Coleman, Jr., Asst. Atty. Gen., St. Paul, Robert W. Kelly, Washington County Atty., Stillwater, for respondent.

**TODD, Justice.**

Defendant was found guilty by a district court jury of aiding and abetting the commission of aggravated robbery, Minn.Stat. §§ 609.05 and 609.245 (1982), for driving the getaway car in the January 2, 1982, armed robbery of the Sunrise Bakery in Mahtomedi which was committed by his accomplice, Brian Hanson (aka Muldoon). The trial court sentenced defendant to an executed prison term of 54 months, the then-presumptive sentence pursuant to section 609.11 and the Minnesota Sentencing Guidelines and Commentary, II.E. (1982). The trial court recently reduced the sentence duration to 36 months pursuant to the retroactive amendment to the Sentencing Guidelines reducing the presumptive sentences for minimum term offenses. On this appeal, defendant seeks (1) an outright reversal of his conviction because the evidence of his guilt was legally insufficient; (2) a new trial because the trial court erred in refusing to suppress an inculpatory statement defendant made to the police; or (3) at least a reduction of his sentence duration to 24 months and credit for time spent in jail in a different county on a different charge. We affirm defendant's conviction and sentence with the qualification that defendant is entitled to credit for pretrial time he spent in jail in the other county.

1. Defendant's first contention is that his conviction should be reversed outright because the evidence supporting the conviction was legally insufficient. The evidence of his guilt consisted of (a) the testimony of Hanson, the robber, implicating defendant in the crime as the driver of the getaway vehicle; (b) the testimony of a sheriff's deputy concerning defendant's inculpatory statement (in which he admitted driving the getaway car); and (c) testimony of defendant's girlfriend, Catherine Murphy, corroborated in part by other evidence, that linked defendant to the bakery (where she worked), to the robber Hanson (with whom they shared an apartment), to a small gun (which she had seen in the possession of defendant and Hanson in November of 1981), to the vicinity of the crime (a bowling alley about a mile and a half from the bakery) about the time the robbery occurred, and to a car that they could have used (her car, which defendant was driving that day). Defendant argues that the trial court erred in admitting his inculpatory statement and that without that statement the evidence corroborating Hanson's testimony is legally insufficient. The statute on which defendant relies, Minn. Stat. § 634.04, requires corroboration that tends to affirm the truth of the accomplice's story and tends to some degree to establish the defendant's guilt. As we hold in section 2 of this opinion, the trial court did not err in admitting defendant's statement to the deputy; therefore, there clearly was sufficient corroboration of Hanson's testimony.[1]

2. Defendant's second contention is that he should be given a new trial because the trial court erred in refusing to suppress his inculpatory statement.

1. This is not to say that the other evidence by itself failed to provide sufficient corroboration, which is something that, because of our holding, we need not decide. We also note that even if we were to hold that it was prejudicial error to admit the inculpatory statement, it would not follow, as defendant argues, that the insufficiency of the other evidence to establish guilt required an outright reversal. There was *Spreigl* evidence—that defendant aided Hanson in an aggravated robbery in Chisago County on November 14, 1981—which the trial court excluded as not needed. If the court had not admitted the inculpatory statement, it presumably would have admitted the *Spreigl* evidence. That being so, if we were to hold that it was error to admit the inculpatory statement, the remedy would not be outright reversal but a new trial.

By way of background, defendant's arrest in Chisago County was originally ruled by the Chisago County District Court to be illegal, but we reversed that ruling before trial in *State v. Patricelli*, 324 N.W.2d 351 (Minn.1982). The omnibus hearing in this case was held while the state's pretrial appeal was pending in the Chisago County prosecution. Defense counsel argued that the inculpatory statement defendant made in connection with this case was the fruit of the illegal arrest and also was an involuntary or coerced statement. The trial court stated that it was unnecessary to determine if the Chisago County District Court's ruling that the arrest was illegal barred it from ruling otherwise because, in the trial court's opinion, defendant's statement was not the unlawful fruit of any illegality in arresting defendant. The trial court apparently believed that the statement defendant gave to Chisago County authorities in connection with that offense was an involuntary statement, but concluded that the subsequent statement defendant gave to Washington County authorities was voluntary and not tainted.

The facts on which we rely in independently evaluating the trial court's conclusion are as follows: On the afternoon of January 17, 1982, Chisago and Washington County deputy sheriffs lawfully arrested defendant in Mahtomedi in Washington County. They took defendant to the jail in Washington County, where he remained for several hours before being transported to the Chisago County Sheriff's Office. There, he was questioned about the Chisago County offense by Roger Kaske of the Chisago County Sheriff's Office from 10:30 p.m. until 2 to 2:30 a.m. Officer Kaske gave defendant a *Miranda* warning before he questioned him. During the interrogation, which resulted in defendant's confessing to the Chisago County robbery, defendant apparently said that he was tired, hungry and not feeling well. Officer Kaske discussed the possibility of arresting Murphy and "might have said" that defendant would be sitting in jail for a long time if he did not cooperate. Defendant was 19 at the time. He had a tenth grade education

and had twice before been arrested. There were disputes in the testimony as to other aspects of the interrogation by Officer Kaske, but the trial court did not make any specific findings of fact resolving those factual disputes.

The interrogation during which defendant made the inculpatory statement regarding the Washington County offense occurred in the Chisago County jail approximately 12 hours after Officer Kaske completed his interrogation of defendant. The officer who conducted the interrogation was Jack Nelson, an investigator with the Washington County Sheriff's Office. Officer Nelson, who was not present during Officer Kaske's interrogation of defendant, testified that he gave defendant a *Miranda* warning and then discussed with defendant whether defendant wanted to give a statement. He testified that defendant, although never saying he did not want to talk, was somewhat reluctant to talk at first. Defendant talked after Officer Nelson told him he felt the defendant was involved in the Washington County offense, he was going to try to prove it, and it would be better if defendant cooperated. Officer Nelson testified that he did not make any promises. Defendant then proceeded to give a taped inculpatory statement.

In independently determining whether a confession or statement was involuntary or coerced, we consider all relevant factors, including "age, maturity, intelligence, education, experience, ability to comprehend, lack of or adequacy of warnings, length and legality of detention, nature of interrogation, physical deprivations, [and] limits on access to counsel and friends * * *." *State v. Linder*, 268 N.W.2d 734, 735 (Minn.1978). Looked at in isolation, the interrogation conducted by Officer Nelson does not lead us to conclude that the resulting statement about the Washington County robbery was involuntary or coerced. We do not decide whether Officer Kaske's interrogation improperly coerced defendant into giving the confession relating to the Chisago County rob-

bery because we agree with the trial court that any violation of defendant's rights in obtaining that confession did not taint the subsequent statement obtained by Officer Nelson. Cases of this court discussing whether a second confession or statement was the fruit of an earlier, illegally obtained confession include *State v. Odenbrett,* 349 N.W.2d 265 (Minn.1984); *State v. Wiberg,* 296 N.W.2d 388 (Minn.1980); *State v. Raymond,* 305 Minn. 160, 232 N.W.2d 879 (1975). Officer Kaske's interrogation dealt with the Chisago County robbery; Officer Nelson's interrogation dealt with the Washington County robbery. The "cat" therefore was not "out of the bag" when Officer Nelson began to talk with defendant about the Washington County robbery. There was a 12-hour interval between the conclusion of Officer Kaske's interrogation of defendant and the start of Officer Nelson's interrogation. In the interval, defendant had an opportunity to sleep and eat. He testified that he did not sleep very long but there is no evidence he told Officer Nelson that or that he still felt sick. Moreover, there is no evidence that Officer Nelson did anything forbidden by the United States Supreme Court in obtaining defendant's statement. Officer Nelson, who had not participated in the earlier interrogation, gave defendant a *Miranda* warning. Defendant did not invoke his right to silence or right to counsel; he merely expressed some reluctance to talk without shutting the door on the possibility. Officer Nelson, simply persuaded defendant in a perfectly proper way to talk. *State v. Merrill,* 274 N.W.2d 99, 108 (Minn. 1978) ("police must also be allowed to encourage [a suspect] to talk where the suspect has not clearly refused"). In short, we believe that the trial court properly concluded that the statement obtained by Officer Nelson was not the suppressible fruit of any illegality committed by Officer Kaske in obtaining the earlier statement.

3. Defendant's final contentions are that his sentence should be (a) reduced from 36 to 24 months and (b) credited with time spent in jail in Chisago County before he was arraigned on the Washington County charge.

▮▮▮▮ (a) The first of these two contentions is controlled by *State v. Cerceo,* 354 N.W.2d 823 (Minn.1984); *State v. Johnson,* 342 N.W.2d 635 (Minn.1984); *State v. Frost,* 342 N.W.2d 317 (Minn.1983); and *State v. Abeyta,* 336 N.W.2d 264 (Minn. 1983). These cases make it clear that ordinarily we will not interfere with a trial court's decision not to sentence a defendant without regard to section 609.11. The picture of defendant that emerges from the presentence investigation report is not that of a person who is particularly amenable to probation, and the fact that he drove the getaway car rather than actually held up the bakery is not a mitigating factor. In any event, under Minnesota case law, the trial court was free to impose the presumptive sentence.

(b) The jail credit which defendant seeks is for time spent in jail in Chisago County after the complaint was issued and before he was arraigned in Washington County. Defendant was arrested in Washington County and transferred to the Chisago County jail on January 27, 1982. Bail was set at $10,000. The Washington County complaint and warrant for defendant's arrest and detention on the Washington County charge were issued on January 29, 1982; the detention order set defendant's Washington County bail at $20,000 pending further hearing. A Washington County "hold" was placed on defendant. At defendant's appearance in Chisago County District Court on February 5, 1982, defendant's attorney said that since there was a Washington County "hold" on defendant he would not make any argument on defendant's Chisago County bail at that time. Defendant was arraigned in Washington County on April 22, 1982. On June 19, 1982, the Washington County District Court reduced defendant's Washington County bail to $5,000. On June 23, 1982, he posted bail and was released from jail. His bail was canceled on November 2, 1982, after the Washington County jury found him guilty.

At the sentencing hearing the trial court gave defendant credit for time spent in jail between April 22 and June 23 and from November 2 to the date of sentencing. The court did not refuse defendant's request for credit for the time spent in jail before April 22, but simply stated that it was going to leave that up to the records officer at the prison. The court sentenced defendant on November 29, 1982. Defendant was sentenced in Chisago County on December 3 to a 32-month term, with the term to run concurrently with his Washington County sentence.

Under Minn.R.Crim.P. 27.03, subd. 4(B), a defendant is entitled to credit for "all time spent in custody in connection with the offense or behavioral incident for which sentence is imposed." The rule does not address the issue of whether a defendant who is jailed before trial on two different charges is entitled to credit for that time against just one sentence. It also does not state precisely what is meant by time spent in jail "in connection with the offense or behavioral incident for which sentence is imposed." Nor do our cases necessarily help in deciding whether defendant is entitled to the credit he seeks.

 We believe that defendant was in jail from January 29 through April 22 "in connection with" the Washington County offense, since the record indicates that one of the reasons he remained in jail was because of the Washington County "hold" on him. As a consequence of that "hold" and because bail in Washington County had been set at $20,000, defendant's attorney made no attempt to reduce the bail set in Chisago County. We also believe that because defendant's sentences are concurrent, he should be able to apply the jail time against both of them. It would be different if defendant's sentences were consecutive because in that case crediting the defendant for jail time against both sentences would give him an unfair double credit. But since defendant received concurrent sentences, it would be unfair to, in effect, punish him for the state's delay in seeking his arraignment by not allowing him the credit against both concurrent sentences that he otherwise would have received.[2]

Affirmed as modified.

---

**2.** In this respect, see III ABA Standards for Criminal Justice, 18–4.7(d) (2 ed. 1980), which states:

> If the defendant is arrested on one charge and later prosecuted on another charge growing out of conduct which occurred prior to arrest, credit against the maximum term and any minimum term of any sentence resulting from such prosecution should be given for all time spent in custody under the former charge which has not been credited against another sentence.

The commentary to this section states in relevant part:

> [I]t should be noted that where multiple sentences are made to run concurrently it is certainly not the intent of this standard to award the credit against one of two concurrent sentences and require its denial against the other. Given the tendency for the same criminal transaction to violate overlapping statutes (*e.g.*, one proscribing mail fraud and the other wire fraud), such an absurd interpretation could frequently render the basic principle of this standard meaningless. But in other situations (such as where the second prosecution follows the expiration of the first sentence and the criminal conduct leading to the current sentence occurred prior to the arrest of the first charge), the legitimate interests of the defendant are amply protected by a single crediting.

*Id.* at n.24, p. 18–315. *See also* 47 A.L.R.Fed. 755 § 4 (1980) (summarizing federal cases supporting the following rule: defendant held in state jail because of federal detainer is entitled to credit for the time against his federal sentence unless it has already been applied to the state sentence and also is entitled to it even if it has been applied to the state sentence if the federal and state sentences are concurrent).