Vincent T. EFFINGER,
Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. C2–85–147.

Supreme Court of Minnesota.

Jan. 17, 1986.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Alan Mitchell, St. Louis Co. Atty., Duluth, for respondent.

YETKA, Justice.

On March 9, 1976, petitioner Vincent T. Effinger pled guilty and was convicted in St. Louis County District Court of three counts of criminal conduct. On September 6, 1984, Effinger filed a petition for post-conviction relief. The district court held a hearing on October 12, 1984, and denied the petition. Effinger appealed from the district court order to the Minnesota Court of Appeals, which affirmed the district court on May 29, 1985. Effinger petitioned this court for further review, which was granted on August 13, 1985. We affirm.

Petitioner Vincent Effinger, then 19, and his brother David, then 23, set out to rob and kill a taxi cab driver on the evening of January 14, 1976. They called a cab to the Friendly Fox Bar in Duluth at approximately 11:00 p.m. When the cab arrived, they directed the driver, 53-year-old Leonard Lorentson, to take them to the isolated intersection of Stebner and Gretchel roads. Vincent Effinger concealed a 2-foot truck wrench in his coat, and his brother carried a knife. Upon arriving at their destination, Vincent Effinger struck Lorentson approximately six times in the head with the wrench, intending to kill him so that they could not be identified. Petitioner described his actions as follows:

> [H]e stopped the car and I hit him once on the head and then I hit him about four or five more times, and the car started rolling and my brother jumped in the front seat and stopped the car, put it in park, and then I reached over to open the door to push him out, and before I pushed him out I took his wallet out of his pocket, put it in my coat pocket, pushed him out, I jumped in the driver's seat and we drove the car to—well, I drove the car to Fifth Street and the Boulevard by the Twin Ponds, and from there we walked back to Modern Transfer.

Petitioner found $30 in the wallet, which he split with his brother. They drove off in the cab for about a mile and a half after leaving their victim in subzero weather on the side of the road.

The police found Lorentson approximately an hour and a half later. He was gravely wounded, unconscious, and severely frostbitten. He was rushed to St. Luke's Hospital in Duluth. Never regaining consciousness and losing his leg to gangrene, Lorentson died on April 12, 1976.

Based on tips received from informants, the police found the Effingers in St. Paul on February 27, 1976, and arrested them. Both made a full confession of the crime and, demanding a speedy trial, pled guilty on March 9, 31 days before Lorentson died, to attempted first-degree murder in violation of Minn.Stat. § 609.185, subd. 1 (1984) with reference to sections 609.17, 609.05, and 609.11; aggravated robbery in violation of Minn.Stat. § 609.245 (1984) with reference to sections 609.05 and 609.11; and unauthorized use of a motor vehicle in violation of Minn.Stat. § 609.55 (1984) with reference to section 609.05. On March 30, 1976, the court sentenced each defendant under the then existing statutes to consecutive sentences of 1–20 years for attempted first-degree murder and aggravated robbery and 0–3 years for unauthorized use of a motor vehicle. The court refused to credit the defendants' sentences for the time spent in custody before trial.

Vincent Effinger filed a pro se petition for post-conviction relief on July 11, 1981, requesting that he be resentenced under the new Minnesota Sentencing Guidelines as provided in Minn.Stat. § 590.01, subd. 3 (1984). On February 24, 1982, while his petition was pending, Effinger and a fellow inmate attempted to escape from the Lino Lakes Correctional Facility. During their attempted escape, the other inmate struck a counselor on the head with a can opener, causing severe lacerations. Both inmates then attempted to lock the counselor in another room, stole a scissors and fled before being apprehended by the prison guards. On March 30, 1982, Effinger was convicted by the Anoka County District Court of attempted escape and sentenced to 1 year and 1 day to run concurrently with his present sentence. As a result of the incident, the St. Louis County District Court took no action on Effinger's 1981 post-conviction relief petition.

On September 6, 1984, Effinger again filed a petition for post-conviction relief with the St. Louis County District Court. The petition requested the court to vacate the consecutive sentence of 0–3 years for the unauthorized use of a motor vehicle as a violation of Minn.Stat. § 609.035 (1984), to credit his 20-year sentence for robbery/attempted murder with the time spent in custody while awaiting trial, and to vacate the sentence of 1–20 years for attempted first-degree murder and aggravated robbery and replace the old sentence with the presumptive sentence of 70 months under the new Minnesota Sentencing Guidelines with credit for all time already served in connection with the offense or, in the alternative, give a sentence equal to time already served as of March 12, 1982, whichever is greater.[1] The district court set the post-conviction relief hearing for October 12, 1984. Along with the petition, the state public defender's office presented a proposed order releasing Effinger from the St. Cloud State Reformatory and requiring the St. Louis County sheriff to transport Effinger to the district court in Duluth in order to attend the hearing. The court refused to sign the order, finding that Minn.Stat. § 590.04 (1984) gave the court discretionary power to determine whether the petitioner would be present at the hearing. Agreeing to order the release of Effinger, the court, however, refused to order Effinger's transportation and left those costs to the expense of the public defender's office. Effinger's counsel reserved the right to appeal the court's findings concerning its discretionary powers and submitted an affidavit from Effinger in lieu of testimony.

---

1. Petitioner maintains that, at the post-conviction hearing, counsel agreed that the circumstances surrounding the offense justified a double durational departure that would establish a presumptive sentence of 140 months. The record does not show that counsel ever reached such an agreement.

The post-conviction relief hearing was held on October 12, 1984. The district court received into evidence the Effinger affidavit, a series of positive work evaluations, a report of the 1982 attempted escape, and five disciplinary reports.[2] The evidence also included a positive psychological evaluation and a document showing Effinger's acceptance into the Freedom House residential therapeutic community effective September 1985.

On December 17, 1984, Effinger's post-conviction relief petition was denied in part and granted in part. The court denied the request to vacate the sentence of 0–3 years for the unauthorized use of a motor vehicle under Minn.Stat. § 609.035 since it found that the taking of the cab was an "afterthought" or a behavioral incident separate from the robbery and attempted murder and that the aggregate punishment was not disproportionate to the offenses. The court also denied the request for resentencing under the new guidelines, finding that Effinger had failed to establish that he would not present a danger to the public as required by Minn.Stat. § 590.01, subd. 3. The court granted Effinger's request to credit his current sentence of 20 years with time spent in custody before trial.[3] Effinger appealed from the post-conviction order to the Minnesota Court of Appeals on January 23, 1984.

The court of appeals affirmed the district court order on June 4, 1985. *Effinger v. State,* 368 N.W.2d 418 (Minn.Ct.App.1985). The court upheld the district court finding that Effinger had failed to show under Minn.Stat. § 590.01, subd. 3 that he did not present a danger to society. The court also found it to be within the district court's discretion under Minn.Stat. § 590.04 to not order the defendant present at the post-conviction relief hearing. The imposition of consecutive sentences for the aggravated robbery/attempted murder and the unauthorized use of a motor vehicle was not, the court found, in violation of Minn.Stat. § 609.035 since the case came under the multiple victim exception. Finally, the court denied Effinger's request that the jail credit time be applied not only to the 20-year aggravated robbery/attempted murder sentence, but also to the 3-year unauthorized use sentence, finding that this would constitute double credit.

Effinger petitioned this court for further review of the court of appeals' decision, which the court granted on August 13, 1985.

The issues raised on this appeal are:

I. Did the district court err in denying Effinger's petition for resentencing?

II. Did the district court err in denying Effinger's request to be transported at state expense to his post-conviction relief hearing?

III. Did the district court err in denying Effinger's petition to vacate his 3-year sentence for unauthorized use of a motor vehicle?

IV. Did the district court err in not applying the jail credit to the 3-year unauthorized use of a motor vehicle sentence as well as to the 20-year aggravated robbery/attempted murder sentence?

V. Petitioner's pro se contentions.

■ Petitioner was already paroled by the time of oral argument, however, we hold that the issues presented on appeal are not moot. *See State v. Block,* 316 N.W.2d 922, 924 (Minn.1982) ("the [Post-Conviction Relief] Act applies equally to persons now on parole"); *State ex rel. Djonne v. Schoen,* 299 Minn. 131, 133, 217

---

**2.** These reports concerned incidents in 1977 involving contraband (30 gallons of fermenting liquid were found in Effinger's cell), unauthorized use of another inmate's television, disorderly conduct (a dining hall fight in which Effinger drew a table knife), a 1978 incident of unsanitary acts and conditions, and a 1979 misconduct citation.

**3.** The court, in its findings of fact, stated that the credit should be applied against both sentences, but in its actual order, the court credited time against only the 20-year robbery/attempted murder sentence. In his petition, Effinger requested only that the credit be applied to the 20-year sentence.

N.W.2d 508, 510 (1974) ("The standard for finding that the issues involved in a criminal appeal are moot is very stringent. Where there remains a 'possibility' that 'adverse collateral legal consequences' will inure to the complaining party, the case is not moot." *quoting Sibron v. New York*, 392 U.S. 40, 55, 88 S.Ct. 1889, 1898, 20 L.Ed.2d 917 (1968)).

■ To obtain resentencing under the new sentencing guidelines, a petitioner must prove that his resulting early release would not present a danger to the public and would not be incompatible with the public welfare. Minn.Stat. § 590.01, subd. 3; *Gilles v. State*, 349 N.W.2d 561 (Minn. 1984); *Smith v. State*, 317 N.W.2d 366 (Minn.1982). The factors to be weighed by the trial court in making a determination to resentence under section 590.01, subdivision 3 include the nature of the petitioner's offense and his discipline record. *See State v. Champion*, 319 N.W.2d 21, 23 (Minn.1982). The district court clearly considered these factors in denying Effinger's petition.

This court sets a narrow standard in reviewing petitions for resentencing, especially for violent crimes:

> [W]e generally will not interfere with the postconviction court's refusal to make the finding that is prerequisite to resentencing, at least in cases in which the petitioner is serving a sentence for a violent offense or has a record suggesting that he is likely to engage in criminal conduct after his release.

*Id.* Petitioner argues that the district court's findings were clearly erroneous and, therefore, the decision should be overturned. In support of his position, however, he simply repeats the evidence submitted to the district court. Given the narrow standard of review, the seriousness of Effinger's crimes, and his prison disciplinary record, we find that the court of appeals correctly upheld the district court's denial of the petition for resentencing under the new guidelines.

■ Under Minn.Stat. § 590.04, subd. 3 (1984), the trial court has the discretionary power to order a petitioner's presence at a post-conviction relief hearing: "The court *may* order the petitioner to be present at the hearing." *Id.* (emphasis added). As the court of appeals found, a petitioner does not have an absolute right to be present at the hearing. *Effinger v. State*, 368 N.W.2d at 420. The district court may, in its discretion, receive evidence in the form of an affidavit or deposition in lieu of oral testimony. Minn.Stat. § 590.04, subd. 3.

■ In the present case, however, the district court did not simply deny the petitioner's request to be present at his post-conviction hearing. Instead, the district court agreed to authorize Effinger's release, but refused to order his transportation from the St. Cloud Reformatory to the St. Louis County District Court at state expense, citing its discretionary authority under section 590.04, subdivision 3. Declining to provide Effinger's transportation expenses, the public defender preserved the right of appeal and agreed to submit an affidavit in lieu of testimony. This action by the district court was in violation of Minn.Stat. § 243.17, subd. 2 (1984) which provides: "The conveyance of prisoners to and from court in connection with postconviction * * * proceedings *shall* be by the sheriff of the county of which the proceedings are to be held and at the expense of the state * * *." (Emphasis added).

■ This was, however, harmless error. The district court's actions were, in essence, equivalent to denying Effinger's request to be present at his hearing. This court has ruled that a petitioner is not entitled to a full evidentiary hearing when the "petitioner has failed to establish that there are any material facts in dispute other than the ultimate question of whether his early release would present a danger to the public and would be incompatible with the welfare of society." *Weinandt v. State*, 324 N.W.2d 918, 919–20 (Minn.1982). There is no prejudice to the defendant, therefore, in having to submit an affidavit in lieu of oral testimony at the post-convic-

tion hearing. Since the only question of fact at issue in Effinger's post-conviction hearing was the possible danger his early release would pose to the public, the court of appeals was correct in upholding the district court's discretionary decision not to order Effinger to be brought to the hearing at state expense.

We emphasize, nonetheless, that the better practice in more serious felony cases is to have the defendant brought before the court so the judge can personally question the defendant, observe his demeanor and be able to acquire a firsthand sense concerning any danger the defendant's early release would pose. However, the decision not to allow the defendant to be present is ultimately within the discretion of the trial court, and we cannot hold in the present case that the error the district court committed in the way it exercised its discretion seriously prejudiced the appellant.

■ To protect against multiple punishments and to assure that punishment is commensurate with the crime, Minn.Stat. § 609.035 (1984) provides:

> [I]f a person's conduct constitutes more than one offense under the laws of this state, he may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them. All the offenses, if prosecuted, shall be included in one prosecution which shall be stated in separate counts.

See also Minn.Stat.Ann. § 609.035 advisory committee comment:

> Ordinarily, a criminal prosecution for a given crime involves but a single violation of law resulting from a single criminal act. But sometimes, a single incident of criminal behavior involves a multiplicity of violations permitting a series of prosecutions and of sentences which exaggerate the criminality of the behavior involved and, in a sense, defeat the policy underlying the constitutional protection against double jeopardy. The intent of the section is to meet these objections by limiting the sentence to the maximum permitted for the most serious crime

committed. In determining, therefore, whether two or more crimes fall within this policy, among the factors to be considered are the singleness of purpose of the defendant and the unity of time and of place of the behavior.

In determining whether a defendant's conduct constitutes more than one offense under section 609.035, the court must first determine whether the conduct constituted a single behavioral incident. *See State v. Johnson*, 273 Minn. 394, 141 N.W.2d 517 (1966). For crimes involving intent, the court must examine the offenses to see whether they were the result of a single motivation directed towards a single goal. *See State v. Reiland*, 274 Minn. 121, 125, 142 N.W.2d 635, 638 (1966). This court has stated: "[T]he essential ingredient of any test is *whether the segment of conduct involved was motivated by an effort to obtain a single criminal objective.*" *Johnson*, 273 Minn. at 404, 141 N.W.2d at 525 (emphasis supplied). We have also recognized that the existence of multiple victims may support the finding of more than one instance of criminal conduct and thus justify multiple sentences. *See State v. Montalvo*, 324 N.W.2d 650, 652 (Minn. 1982).

■ In the present case, the district court found that Effinger's aggravated robbery/attempted murder and his unauthorized use of a motor vehicle constituted two separate behavioral incidents and that the aggregate punishment was not disproportionate to the crime. The court stated its findings as follows:

> That the offense of unauthorized use of a motor vehicle in this case, for which the Defendant was given a consecutive three year sentence, was not part of the same behavioral incident giving rise to the attempted first degree murder and aggravated robbery convictions and therefore was not considered a single behavioral incident in sentencing. That the Defendant and his brother premeditated and planned the murder and robbery of the victim, but at no time contemplated nor considered the taking of the

victim's cab, until after the robbery and attempted murder were accomplished; and that therefore the crimes constituted a divisable series of incidents, rather than a single behavioral incident; and that the taking of the automobile simply came as an afterthought.

\* \* \* That moreover the punishment was not disproportionate to the culpability of the Defendant in the aggregate of his crimes.

The court of appeals upheld the district court's denial of petitioner's request to vacate the sentence of 0–3 years on the grounds of the multiple victims exception. *Effinger v. State*, 368 N.W.2d at 420.

Petitioner's attorney, at oral argument, made an eloquent presentation, showing an exceptional knowledge of case law on the subject of multiple sentencing and arguing that the aggravated robbery/attempted murder and the unauthorized use of the motor vehicle were all for one object—the completion of the crime. However, since this court reviews the district court's findings of fact under a clearly erroneous standard, we refuse to overturn the finding of the trial court that the robbery and attempted murder were one criminal objective and the unauthorized use of the cab was another criminal objective or was, as the district court stated, an "afterthought." Indeed, from the facts, it appears highly doubtful that the Effingers originally intended to use the car as a get-away vehicle. In their later descriptions of their scheme to rob and kill a cab driver, they never mentioned any plan to take the cab. It was only after they brutally attacked and robbed Lorentson and the car began to roll that it appeared to occur to David Effinger to jump into the driver's seat, push the victim out, and drive off in the cab. From the facts, we cannot disagree with the district court's finding that the taking of the cab was an afterthought.

Since we uphold the district court finding that the murder/robbery and the unauthorized use of a motor vehicle were separate behavioral incidents, we need not decide whether the situation also qualifies under the multiple victims exception to section 609.035.

■ Effinger's 20-year and 3-year sentences run consecutively. Under Minn.R. Crim.P. 27.03, subd. 4, a defendant is to be granted credit towards the expiration of his sentence for all time spent in custody in connection with an offense. This court has noted, however, that, in situations of consecutive sentences, the jail credit should be applied to only the first sentence since to do otherwise would constitute "double credit." *State v. Patricelli*, 357 N.W.2d 89 (Minn.1984). In *Patricelli*, the defendant was allowed jail credit against his concurrent sentences, but we noted that "[i]t would be different if defendant's sentences were consecutive because in that case crediting the defendant for jail time against both sentences would give him an unfair double credit." *Id.* at 94. Petitioner argues that, since, under the previous sentencing statutes, his consecutive sentences are actually indeterminate, the double credit should be granted. This court has made no such distinction between jail credit given determinate and indeterminate sentences, and to allow such double credit would defeat the purpose of consecutive sentencing.

■ Effinger makes a series of pro se contentions that, in essence, allege prejudice on the part of the district court and violations of his constitutional rights due to the fact that his brother and codefendant was paroled earlier. Petitioner has made no showing of prejudice on the part of the judge. *See Borchert v. Borchert*, 279 Minn. 16, 19, 154 N.W.2d 902, 905 (1967). The fact that codefendants are paroled at different times, if at all, is not a violation of constitutional rights. *State v. Gamelgard*, 287 Minn. 74, 77–79, 177 N.W.2d 404, 407–08 (1970).

The court of appeals is affirmed.

PETERSON, J., took no part in the consideration or decision of this case.