**James Joseph RILEY, Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. C9–86–429.**

Court of Appeals of Minnesota.

Nov. 18, 1986.

C. Paul Jones, Public Defender, Ann Remington, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas Johnson, Hennepin Co. Atty., Paul R. Jennings, Asst. Co. Atty., Minneapolis, for respondent.

Considered and decided by RANDALL, P.J., and FOLEY and HUSPENI, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

This is an appeal from the post-conviction court's denial of a petition for re-sentencing under the guidelines. We affirm.

## FACTS

In 1973, appellant was convicted of aggravated rape in violation of Minn.Stat. §§ 609.05, 609.29 (1) (1971). He was sentenced to the custody of the youth commis-sion for an indeterminate term not to exceed thirty years.

In January 1975 the supreme court dismissed an appeal of the judgment of conviction pursuant to a stipulation of the parties. In 1978 the Minnesota Corrections Board transferred appellant to adult status after determining that he was dangerous to the public. The Hennepin County District Court affirmed the order of the Minnesota Corrections Board in June 1979, and the supreme court affirmed one year later.

In November 1980, appellant was found to be suffering from schizophrenia. On December 7, 1981, appellant filed a petition for post-conviction relief seeking re-sentencing under the Minnesota Sentencing Guidelines, pursuant to Minn.Stat. § 590.-01, subd. 3 (1980 & Supp.1981). By stipulation of the parties, the district court dismissed the petition without prejudice.

On December 31, 1981, the court found appellant to be a mentally ill person who failed to protect himself from exploitations. An order for commitment allowed for involuntary hospitalization. Appellant was provisionally discharged in 1982.

In February 1984, appellant was admitted to Oak Park Heights (MCF/OPH) mental health unit. He was believed to be mentally ill and in imminent danger of injuring himself and others. Appellant was discharged approximately one month later. In September 1983 appellant voluntarily re-admitted himself into the MCF/OPH mental health unit. The admission referral indicated that appellant was hyperactive, had conceptual disorganization, motor disturbances including bizarre postures, motor retardation and/or stupor, and was unable to care for himself. After the court found appellant was mentally ill, it signed a warrant of commitment in July 1984. The Department of Human Services removed appellant's mentally ill label after expiration of the six months imposition.

On November 7, 1985, appellant again petitioned for re-sentencing. At the post-conviction hearing, appellant testified that he had not been arrested for, charged with, or convicted of any new offenses. He had,

however received numerous disciplinary violations while incarcerated. These included attempted escape, disorderly conduct, verbal abuse, threatening of staff and others, bribery, contraband (drugs), and two instances of assault.

In an order filed February 19, 1986, the Hennepin County District Court denied appellant's petition. The court found that appellant "failed to meet his burden of proving that his early release from his sentence would not present a danger to the public and would not be incompatible with the welfare of society." Riley appeals from this order.

Since his incarceration, appellant has had numerous opportunities to participate in treatment programs. Appellant has had serious trouble adjusting to these programs and has been uncooperative.

In 1975, appellant was discharged from the Reshape program at St. Cloud (MCF/SCL) because of negative behavior that antagonized and disrupted the treatment process.

In February 1979, appellant was paroled to the Eden House Program. His parole was terminated in May 1979, after he had absconded. Prior to this, appellant was involved in an altercation with another Eden House resident while they were at Hennepin County Medical Center, and appellant was detained by hospital security staff.

In May 1981, appellant again obtained conditional parole to the Eden House Program. Parole was terminated eight days later after he again absconded.

In July 1982, appellant obtained conditional parole to Freedom House. Parole was terminated eight days later after he had again absconded.

In June 1983, appellant was admitted into the Atlantis Chemical Dependency Program. The staff terminated his participation because appellant was disruptive to the treatment process.

In October 1984, appellant was paroled to the Minnesota Security Hospital in St. Peter under the mentally-ill commitment process. While there, appellant was involved in physical altercations with two patients and a verbal altercation with another patient. In January 1985 appellant quit the program. At that time, the mentally-ill commitment process under which appellant had been paroled had expired. Appellant was subsequently transferred to the Nicollet County Jail and then to Stillwater Prison (MCF/STW).

In March 1985, appellant was paroled on condition that he complete the Eden House Program. One week later he was taken to the hospital for high blood pressure. Appellant absconded from the hospital less than two weeks later and his parole was again terminated.

Appellant admits that he is chemically dependent on heroin and cocaine. He testified that each time he gets out he starts using drugs and alcohol right away. He then goes off his medication. Appellant's expert witness, Dr. Osekowsky, testified he expected that without successful treatment, appellant would go back to street drugs, drop his prescription medication, and then lose his ability to control his behavior.

## ISSUE

Did the post-conviction court abuse its discretion by determining that appellant failed to prove that his early release would not present a danger to the public?

## ANALYSIS

The standard in reviewing petitions for re-sentencing, especially for violent crimes, is narrow. *Effinger v. State*, 380 N.W.2d 483, 487 (Minn.1986). The post-conviction court has discretion to re-sentence the petitioner, but is not under any obligation to do so. *Frank v. State*, 326 N.W.2d 636, 637 (Minn.1982). The reviewing court

generally will not interfere with the post-conviction court's refusal to make the finding that is prerequisite to re-sentencing, at least in cases in which the petitioner is serving a sentence for a violent offense or has a record suggesting that

he is likely to engage in criminal conduct after his release.

*State v. Champion*, 319 N.W.2d 21, 23 (Minn.1982). "The scope of our review in a postconviction proceeding is limited to the question of whether there is sufficient evidence to sustain the findings of the post-conviction court." *Barness v. State*, 290 Minn. 509, 510, 187 N.W.2d 111, 112 (1971).

Appellant was originally sentenced to an indeterminate term not to exceed thirty years. Due to disciplinary violations, he lost 220 days good time. Appellant also had 868 days stop time based on warrants that were outstanding due to parole violations. His anticipated release date is November 15, 1996. If appellant were to be re-sentenced to a double durational departure, he would be immediately released, but would remain under the supervision of the Department of Corrections until August 1987.

Appellant seeks re-sentencing under Minn.Stat. § 590.01, subd. 3 (1984), either to the presumptive guidelines sentence of 65 months, based on a severity level VII offense for a criminal history score of 2, or to a double durational departure to 130 months justified by aggravating factors. Appellant acknowledges that victim cruelty warrants double departure under the guidelines and seeks this "upward departure" as it would result in his immediate release.

The requested re-sentencing would result in appellant's immediate release on condition that he successfully complete treatment at the Minnesota Security Hospital at St. Peter. He claims that treatment would benefit society more than if he were incarcerated until his sentence expires.

Minn.Stat. § 590.01, subd. 3, provides:

Subd. 3. A person who has been convicted and sentenced for a crime committed before May 1, 1980 may institute a proceeding applying for relief under this chapter upon the ground that a significant change in substantive or procedural law has occurred which, *in the interest of justice, should be applied retrospec-* *tively,* including re-sentencing under subsequently enacted law.

No petition seeking re-sentencing shall be granted unless the court makes specific findings of fact that release of the petitioner prior to the time he or she would be released under the sentence currently being served does not present a danger to the public and is not incompatible with the welfare of society.

(Emphasis added).

In a petition for post-conviction relief under Minn.Stat. § 590.01, subd. 3, the petitioner has the burden of proving that his early release would not present a danger to the public and would not be incompatible with the welfare of society. *Smith v. State*, 317 N.W.2d 366, 367 (Minn.1982). The trial court expressly found appellant did not meet this burden of proof.

Trial courts consider numerous factors in Minn.Stat. § 590.01, subd. 3, resentencings: the petitioner's past and present conduct, *Stahlberg v. State*, 319 N.W.2d 12 (Minn. 1982); the seriousness of the petitioner's conduct and his repeated failure on parole, *Champion*, 319 N.W.2d at 23; his discipline record, *Effinger v. State*, 380 N.W.2d at 487; threatening or violent conduct while in treatment, *Brown v. State*, 324 N.W.2d 920, 921 (Minn.1982); chemical dependency, *Meyer v. State*, 324 N.W.2d 647, 648 (Minn.1982); reluctance to participate in chemical dependency treatment, *Thiele v. State*, 326 N.W.2d 13, 14 (Minn.1982); or loss of good time while in prison, *Brown*, 324 N.W.2d at 921.

Appellant concedes he is unable to complete treatment in the community and has recently left the mental health unit at MCF–OPH, to which he was repeatedly admitted, without staff approval. However, appellant points to Dr. Osekowsky's testimony. Dr. Osekowsky opined that appellant did not need confinement in a prison, but that a security hospital would be sufficient, because appellant was not imminently dangerous and needed to be confined somewhere where he could get treatment.

Dr. Osekowsky also stated that without successful treatment appellant would, upon

release, probably get back into street drugs and alcohol and stop taking the prescription medication necessary to control his mental illness. He admitted that appellant had demonstrated neither stability and acceptance of his disorder nor willingness to conform to treatment. He had been paroled to a security hospital and had been transferred back after "they had done as much as they could."

In *Johnson v. State*, 331 N.W.2d 757 (Minn.1983) the supreme court held that the district court was not required to rely on a psychiatrist's expert testimony that the petitioner's early release would not present danger to the public. Similarly, here the court was entitled to listen to and evaluate, but not necessarily accept the expert's testimony. Dr. Osekowsky's testimony was clearly admissible, but its weight and credibility were for the trial court.

The post-conviction court reviewed the base file and was in a position to evaluate the factors pertinent to a determination on whether appellant's early release would not endanger the public. The court found that appellant did not overcome negative factors that weighed heavily against him. Appellant was sentenced for a violent crime. He had a drug habit and a history of escaping from treatment programs. He exhibited threatening behavior against co-prisoners and fellow patients in treatment, including physical violence, and he admitted that when released in the past he had immediately gone back on street drugs and off his prescription medication. The trial court was justified in not re-sentencing appellant.

### DECISION

The trial court did not err in denying appellant's petition for re-sentencing.

Affirmed.