*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0624**

State of Minnesota,
Respondent,

vs.

Peter William Warren,
Appellant.

**Filed May 26, 2015
Affirmed in part, reversed in part, and remanded
Minge, Judge***

Redwood County District Court
File No. 64-CR-13-99

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Steven S. Collins, Redwood County Attorney, Redwood Falls, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Schellhas, Judge; and Minge,

Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**MINGE**, Judge

On appeal from his convictions of and sentences for second-degree unintentional murder and ten counts of first-degree arson, appellant argues that (1) the circumstantial evidence was insufficient to prove beyond a reasonable doubt that he intended to damage any of the individual apartment units in the complex; (2) he is entitled to a new trial as a result of prejudicial prosecutorial misconduct and erroneously admitted evidence; (3) the district court erred by convicting and sentencing him for the arson of the entire building because it was an included offense of the second-degree murder conviction; and (4) the district court erred by sentencing him for the arson of the victim's apartment because the offense was committed as part of the same behavioral incident as the second-degree murder conviction. We affirm in part, reverse in part, and remand for resentencing.

## FACTS

Shortly before 7:00 p.m. on January 24, 2013, a fire was reported in Redwood Falls at the Lakeside Manor, a five-story apartment building with a total of 56 rental units. When firefighters arrived at the scene, black smoke was pouring out of the windows on each of the building's four above-ground floors. Firefighters were able to safely evacuate all of the residents except Gene Gilland, who lived in apartment 101 on the first floor. Gilland was found unconscious in his apartment, and died a short time later of carbon monoxide toxicity.

The fire caused flame damage to the building's first floor and smoke damage throughout much of the remainder of the building. Subsequent investigation determined that the fire's origin was a large closet located in the common dining area in which mealtime

supplies such as foam cups, disposable plates and utensils, and tables and chairs were stored. The fire marshal also determined that the fire was not accidental but that it had been started through the introduction of an open flame to the combustible materials inside the closet.

In February 2013, appellant Peter William Warren was charged with one count of second-degree unintentional murder, one count of third-degree murder, one count of second-degree manslaughter, and ten counts of first-degree arson. At trial, R.L., a resident of Lakeside Manor, testified that he was in the first-floor community TV room adjacent to the dining room at the time the fire occurred. According to R.L., he was watching TV when appellant walked through the room. R.L. testified that he asked appellant to bring "some of his movies down," that appellant replied that he would "in a while," and that appellant then left the room walking toward "the rest room areas," but returned about 45 minutes later and told R.L. that he would get a movie from his apartment. R.L. testified that within a few seconds of appellant leaving the room, he heard the fire alarm and saw smoke and flames inside the dining area.

The state also admitted surveillance videos from the apartment complex showing appellant getting off an elevator on the first floor of the apartment complex at 6:48 p.m. and walking into the dining room area. At about 6:53 p.m., the video shows appellant leaving the TV room and heading toward a stairwell. Two minutes later, the video shows R.L. leaving the TV room and entering the stairwell, followed by a large plume of smoke.

Special Agent Derek Woodford of the Minnesota Bureau of Criminal Apprehension testified that he interviewed appellant as part of the investigation of the fire. Agent

Woodford testified that during the interview, appellant claimed he had been in the dining room just prior to the start of the fire "[l]ooking for deer" out a window. Appellant stated that he did not smell smoke or see any flames while he was on the first floor and denied starting the fire.

A jury found appellant guilty of all charged offenses except third-degree murder. Appellant was then sentenced to 68 months for count 4, arson of Lakeside Manor. He also received sentences, concurrent to count 4, the prior Lakeside Manor arson count, and to each other, of: 88 months for count 5, arson of apartment 101; 98 months for count 6, arson of apartment 102; and 98 months for each of counts 7-10, arson of apartments 103, 104, 212, and 325. He further received 48-month sentences, consecutive to one another and to all prior pronounced sentences, for counts 11-13, arson of apartments 327, 439, and 557. Finally, the district court imposed a consecutive sentence to all previous sentences of 150 months for count 1, second-degree unintentional murder. The multitude of counts, convictions, and sentences is complex. But, the total aggregate term of appellant's sentence was 392 months. This appeal followed.

## D E C I S I O N

### I.

When reviewing the sufficiency of evidence to support a conviction, this court conducts "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction," is sufficient to allow jurors to reach a verdict of guilty. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted). We assume that "the jury believed the state's witnesses and disbelieved any evidence to the

4

contrary." *State v. Caldwell*, 803 N.W.2d 373, 384 (Minn. 2011) (quotation omitted). We "will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense." *Ortega*, 813 N.W.2d at 100.

A conviction for arson in the first degree is warranted when one "unlawfully by means of fire or explosives, intentionally destroys or damages any building that is used as a dwelling at the time the act is committed." Minn. Stat. § 609.561, subd. 1 (2012). Any "separately secured or occupied" unit within a building "shall be deemed a separate building" for purposes of the arson statutes. Minn. Stat. § 609.556, subd. 3 (2012).

Here, appellant was charged with ten counts of first-degree arson under Minn. Stat. § 609.561, subd. 1. Of these ten counts, the initial and predicate charge was for the Lakeside Manor building itself and the other nine counts were for each of the most heavily damaged apartments, including the apartment in which Gilland died. In this appeal, appellant challenges only the sufficiency of the evidence for his convictions relating to the nine separate apartment units.

"By definition, arson is a specific intent crime." *State v. Battin*, 474 N.W.2d 427, 431 (Minn. App. 1991), *review denied* (Minn. Oct. 23, 1991). Arson convictions, however, often rely on circumstantial evidence because typically no one is at the scene when the fire is discovered. *State v. Jacobson*, 326 N.W.2d 663, 665 (Minn. 1982). "A conviction based on circumstantial evidence . . . warrants heightened scrutiny." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010). "Circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to

5

exclude beyond a reasonable doubt any reasonable inference other than guilt." *Id.* (quotation omitted). This court will not overturn a circumstantial-evidence conviction based on "mere conjecture." *Id.* (quotation omitted). Instead, we apply a two-step analysis when examining the sufficiency of circumstantial evidence. *State v. Silvernail*, 831 N.W.2d 594, 598-99 (Minn. 2013).

"The first step is to identify the circumstances proved. In identifying the circumstances proved, we defer to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the [s]tate." *Id.* (citation and quotation omitted). The jury "is in the best position to determine credibility and weigh the evidence." *Al-Naseer*, 788 N.W.2d at 473. Therefore, the circumstances proved are identified "in the light most favorable to the verdict." *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012).

Here, viewing the evidence in the light most favorable to the verdict, the circumstances proved at trial are as follows: (1) the fire was intentionally started in a closet in the dining room igniting the combustible materials in the closet, and it burned very hotly and spread quickly; (2) appellant was familiar with Lakeside Manor, having lived in the building for approximately one year with his girlfriend and occasionally helped out with minor chores in the building; (3) a week before the fire, appellant attended an informational meeting held by the fire department in the common room of Lakeside Manor at which evacuation procedures in the event of a fire in the building were explained; and (4) appellant was in the dining room area for five minutes by himself before the fire started, and within

6

two minutes of appellant leaving the dining room, smoke was observed emanating from that area.

"The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Silvernail*, 831 N.W.2d at 599 (quotation omitted). In making this determination, we do not "review each circumstance proved in isolation," but instead we consider the circumstances as a whole. *State v. Andersen*, 784 N.W.2d 320, 332 (Minn. 2010). "The [s]tate does not have the burden of removing all doubt, but of removing all reasonable doubt." *Al-Naseer*, 788 N.W.2d at 473. We independently examine the reasonableness of the possible inferences and give "no deference to the fact finder's choice between reasonable inferences." *Id.* at 473-74 (quotation omitted). To ensure that there is no reasonable doubt as to the defendant's guilt, there must be no reasonable inference inconsistent with guilt. *Id.* at 474.

Appellant does not dispute that the evidence was sufficient to prove that he started the fire, but instead argues that "[b]ecause the circumstantial evidence did not exclude the rational alternative hypothesis that [he] intended to damage *only* the common area of the building, the evidence was not sufficient to prove his guilt for any of the nine counts of arson relating to the individually damaged apartments." To support his claim, appellant points to several factors that he asserts indicate his lack of intent to destroy the nine individual units: (1) he called 911; (2) he lived on the second floor, directly above the dining room; (3) the lack of evidentiary support for the state's claim that he had an abnormal

fascination with firefighting;[1] and (4) the state failed to allege a motive for destroying all the apartment units.

In examining the statute and caselaw, motive is not an element of first-degree arson; it is separate from the specific intent that is an element of this offense. *See State v. Ness*, 707 N.W.2d 676, 687 (Minn. 2006) ("Motive is not an element of most crimes . . . . [M]otive concerns external facts that create a desire in someone to do something, whereas intent is a state of mind in which an act is done consciously, with purpose." (citation omitted)). The statute requires the state to prove intent by showing "that the defendant acted with the purpose of destroying or damaging the building, or with the belief that the act would cause the building to be destroyed or damaged." 10A *Minnesota Practice*, CRIMJIG 18.02 (2010); *see* Minn. Stat. §§ 609.561, subd. 1, .02, subd. 9(3) (2014) (providing that the use of "intentionally" in a criminal statute "means that the actor either has a purpose to do the thing or cause the result specified or believes that the act performed by the actor, if successful, will cause that result"). The fact-finder "may infer that a person intends the natural and probable consequences of his actions and a defendant's statements as to his intentions are not binding on the jury if his acts demonstrated a contrary intent." *State v. Cooper*, 561 N.W.2d 175, 179 (Minn. 1997) (citation omitted).

Here, the fire marshal testified that the fire was intentionally started in a closet in the dining area, and that based upon the combustible materials in the closet, the fire was very

---

[1] Appellant's claim that the state asserted at trial that appellant had an abnormal fascination with firefighting is not supported by the record. As the state points out, the "evidence which allegedly pointed to an 'abnormal fascination with firefighting' was never introduced by the [s]tate after appellant objected."

8

hot and spread rapidly. The record indicates that the individual apartments were immediately adjacent to or above the cafeteria. The logical inference from this evidence is that appellant started the fire where he would be unnoticed but where it would spread rapidly thereby damaging the entire building. In other words, the natural consequence of starting a fire in such a place is that the entire building would be damaged by the fire. This evidence is sufficient to prove that appellant intended to damage the entire building because a jury can infer that appellant intended the natural consequences of his actions. *See id.* Moreover, evidence of motive was not necessary to prove that appellant intended to destroy the individual apartment units at Lakeside Manor. Finally, the fact that appellant lived in the building and called 911 does not promote a reasonable inference other than guilt; instead, the manner in which appellant started the fire—in a relatively central location with highly combustible materials—excludes the alternative hypothesis that appellant intended to damage only the common area of the building. Accordingly, the evidence was sufficient to sustain all of appellant's convictions of first-degree arson.

## II.

Appellant argues that (1) the prosecutor committed prejudicial misconduct by attempting to "elicit otherwise inadmissible evidence"; and (2) the district court erred by failing to, sua sponte, redact appellant's second interview with police to exclude questioning about this interest in firemen and firefighting. Appellant argues that even if each individual error is not sufficiently prejudicial to grant a new trial, the cumulative effect of these errors deprived him of his right to a fair trial.

9

### A.    *Prosecutorial misconduct*

This court reviews claims of prosecutorial misconduct that were objected to at trial under a two-tiered harmless-error test. *State v. Yang*, 774 N.W.2d 539, 559 (Minn. 2009). Cases involving claims of "unusually serious" prosecutorial misconduct are reviewed for "certainty beyond a reasonable doubt that misconduct was harmless," while claims of less-serious prosecutorial misconduct are reviewed "to determine whether the misconduct likely played a substantial part in influencing the jury to convict." *Id.*

A prosecutor "is a minister of justice whose obligation is to guard the rights of the accused as well as to enforce the rights of the public," and to ensure that a defendant receives a fair trial. *State v. Ramey*, 721 N.W.2d 294, 300 (Minn. 2006) (quotation omitted). A prosecutor may not intentionally elicit inadmissible testimony from a state's witness. *State v. Haglund*, 267 N.W.2d 503, 506 (Minn. 1978). When the state intentionally elicits impermissible testimony, a reviewing court is much more likely to find prejudicial misconduct. *State v. Richmond*, 298 Minn. 561, 563, 214 N.W.2d 694, 695 (1974).

Here, while examining the chief of the Redwood Falls Fire Department, the prosecutor asked if he "had any interaction with [appellant] in any other fires that you've been involved with?" Appellant immediately objected and the objection was sustained. Nonetheless, appellant argues that "[t]his attempt to elicit otherwise inadmissible evidence of [appellant's] other acts was prosecutorial misconduct because of its tendency to lead the jury to convict [him] based upon the insinuation that he was a firebug, rather than upon the strength of the state's legitimate evidence."

We disagree. The question asked by the prosecutor did not directly implicate any inadmissible character evidence. Although appellant claims the question insinuates that he is a "firebug," appellant's claim is speculative. The record reflects that after appellant objected to the question, a sidebar was held where the district court inquired as to the relevance of the question. The prosecutor replied: "just for him to - - that's how he knows him, that he's seen him before." And there is nothing more in the record indicating that the prosecutor was attempting to elicit inadmissible character evidence. Thus, appellant has not established that the prosecutor committed misconduct by asking the question.

B.    *Redaction*

Appellant also claims that the district court erred by failing to redact questioning about his peculiar interest in firefighters from his second interview with law enforcement. Appellant, however, never requested that this line of questioning be redacted. "Failure to object to the admission of evidence generally constitutes waiver of the right to appeal on that basis." *State v. Tscheu*, 758 N.W.2d 849, 863 (Minn. 2008). Nonetheless, an unobjected-to error can be reviewed on appeal "if it constitutes plain error affecting substantial rights." *Ramey*, 721 N.W.2d at 297. An error is "plain" if it is "clear or obvious" in that it "contravenes case law, a rule, or a standard of conduct." *State v. Jones*, 753 N.W.2d 677, 686 (Minn. 2008). An error affects substantial rights "if the error was prejudicial and affected the outcome of the case." *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998).

The record reflects that during his January 31, 2013 interview with police, appellant was asked twice whether he liked firemen and whether he wished he could have been a

11

fireman. Police also asked him about his "fire sweatshirts" and Redwood Falls fire coat that he used to own. Appellant claims that the district court should have sua sponte redacted these questions and answers because they were irrelevant, and the answers would "only have constituted inadmissible character evidence."

Appellant's argument is without merit. As the state points out, the parties specifically discussed the recording with the district court, and appellant never questioned the admissibility of these questions and answers. Appellant's decision not to object to the admissibility of these questions and answers could have been strategic; he may have considered this information as showing an aversion to fire and relevant to his defense. If the district court had sua sponte redacted these questions and answers, the court might have infringed upon appellant's trial strategy. We conclude that the district court did not err by failing to redact appellant's second interview with law enforcement.

### C.    *Cumulative impact of any alleged errors*

When "the number of errors and the seriousness of some of them" render us "unable to determine whether the jury based its verdict on the admissible evidence and the reasonable inferences derived therefrom," we may determine that the defendant was deprived of a procedurally fair trial. *State v. Mayhorn*, 720 N.W.2d 776, 792 (Minn. 2006). To find cumulative error, we must find multiple errors that, when combined, are more prejudicial than each of the errors separately. *State v. Penkaty*, 708 N.W.2d 185, 200 (Minn. 2006).

Here, even if we were to determine that the prosecutor committed misconduct at trial and that the district court erred by failing to sua sponte redact appellant's second interview

12

with law enforcement to exclude questioning about his particular interest in firefighters, appellant must demonstrate that he was prejudiced by the cumulative errors. The fire marshal testified that the fire was not accidental, that it began in a closet in the dining room, and that the combustible material in the closet caused the fire to burn very hot. Moreover, eyewitness testimony placed appellant alone in the dining room within minutes of when the fire began. Surveillance video corroborated the eyewitness testimony, and showed appellant leaving the dining area minutes before smoke was seen emanating from that area on the video. And appellant's interviews with police were admitted into evidence in which he claimed that he was in the dining room looking out the window at deer, even though he admitted that he was able to see the deer from his apartment window, which was above the dining area. Here, the alleged errors and misconduct were minor and likely had very little impact on the jury when considered in conjunction with the state's evidence as a whole. Accordingly, we conclude that appellant is not entitled to a new trial.

**III.**

"Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04 (2012). Whether an offense is a lesser-included offense of another offense is a legal question that appellate courts review de novo. *State v. Cox*, 820 N.W.2d 540, 552 (Minn. 2012).

Appellant argues that the district court erred by convicting and sentencing him for first-degree arson of Lakeside Manor because that offense was an included offense of the second-degree murder conviction. The state concedes that the district court "should not have convicted and sentenced appellant of the first-degree arson [of the building]" because

13

second-degree murder was a felony murder charge and the arson charge was a necessary included offense under Minn. Stat. § 609.04, subd. 1(4). The record reflects that the arson of Lakeside Manor was the predicate offense because the jury instructions state that for the jury to find appellant guilty of second-degree unintentional murder under Minn. Stat. § 609.19, subd. 2(1) (2012), the jury had to find that Gilland's death was caused while appellant committed or attempted to commit the specified offense of first-degree arson of Lakeside Manor. Because the first-degree arson of Lakeside Manor was an included offense of the second-degree murder offense, we vacate appellant's conviction of the arson of Lakeside Manor. *Cf. State v. Bertsch*, 707 N.W.2d 660, 666 (Minn. 2006) (vacating conviction and sentence for possession of child pornography when it was an included offense of dissemination of child pornography and arose from same behavioral incident as dissemination offense).

## IV.

Finally, appellant argues that his sentence for the arson of apartment 101 should be vacated because it is part of the same behavioral incident as second-degree murder.[2] Minn. Stat. § 609.035, subd. 1 (2012), provides that a person whose conduct "constitutes more than one offense" may be punished for only one of them. The test is whether the offenses are part of "a single behavioral incident." *Effinger v. State*, 380 N.W.2d 483, 488 (Minn. 1986). Whether multiple offenses form part of a single behavioral act is a question of fact. *See id.* at 489 (reviewing district court's finding of two separate behavioral acts under

---

[2] Note that this sentencing issue does not extend to appellant's conviction of arson of apartment 101. Appellant does not argue that this arson charge was a predicate offense to the murder conviction and that the apartment 101 conviction should be vacated.

clearly erroneous standard). "But where the facts are established, the determination is a question of law subject to de novo review." *State v. Marchbanks*, 632 N.W.2d 725, 731 (Minn. App. 2001).

The supreme court, in *State v. Bookwalter*, analyzed the issue of whether two crimes arose from the same behavioral incident, using arson and murder as an example. 541 N.W.2d 290, 294 (Minn. 1995). The court explained that "[f]or example, when arson is the means by which the defendant commits a murder, the defendant may not be sentenced both for the murder and for the arson, because the time and place of the offenses coincide and because the defendant is motivated by an effort to obtain a single criminal objective." *Id.* Therefore, under *Bookwalter*, we conclude that the arson of apartment 101 and the second-degree murder offense arose from the same behavioral incident.

The state argues that appellant's sentence was appropriate under the multiple-victim exception to the single-behavioral-incident rule. Under the multiple-victim exception, a district court may impose "multiple sentences for multiple crimes arising out of a single behavioral incident if: (1) the crimes affect multiple victims; and (2) multiple sentences do not unfairly exaggerate the criminality of the defendant's conduct." *State v. Skipintheday*, 717 N.W.2d 423, 426 (Minn. 2006).

In this case, the arson offense of Lakeside Manor had multiple victims because many units involving many different people were affected by the fire. But for purposes of appellant's argument, the offenses at issue are the arson of apartment 101 and second-degree murder. Because Gilland was the only victim of that particular unit, there were not multiple victims of the arson of apartment 101. And Gilland was the only victim of the felony

15

murder offense. Therefore, because the arson of apartment 101 and the felony murder offense arise out of the same behavioral incident, and because the multiple-victim exception is not applicable to that offense, we remand to the district court with instructions to vacate appellant's sentence for the arson of apartment 101.

**Affirmed in part, reversed in part, and remanded.**