STATE of Minnesota, Respondent,

v.

Tommy HAWKINS, petitioner, Appellant.

No. C5–92–1330.

Supreme Court of Minnesota.

Jan. 21, 1994.

John Stuart, State Public Defender and Melissa Sheridan, Asst. State Public Defender, St. Paul, for appellant.

Hubert H. Humphrey, III, Minnesota Atty. Gen., and Tom Foley, Ramsey County Atty., and Darrell C. Hill, Asst. Ramsey County Atty., St. Paul, for respondent.

WAHL, Justice.

Appellant Tommy Hawkins was tried to a jury in Ramsey County District Court and convicted of attempted first degree murder (Minn.Stat. §§ 609.185(4), 609.17 (1992)) and aggravated robbery (Minn.Stat. § 609.245

(1992)). He was sentenced to concurrent terms of 240 months for attempted murder and 216 months for aggravated robbery. The court of appeals affirmed. Appellant argues to this court that the admission of incriminating statements he made to another inmate in a holding cell violated his right to counsel under the federal and state constitutions; that the exclusion of part of the testimony of a potential defense witness violated his right to present a defense; that the prosecutor's misconduct during the opening statement and closing argument denied him a fair trial; and that the trial court erred in imposing separate sentences for two offenses which arose out of a single course of conduct. We affirm the attempted murder conviction and, pursuant to Minn.Stat. § 609.035 (1992), vacate the aggravated robbery sentence.

Appellant's convictions arose from an incident in which undercover BCA narcotics agent Michael Wold was robbed and assaulted in the stairwell of a St. Paul apartment building. On December 5, 1991, Wold, acting on a tip from a confidential informant, made arrangements to purchase two ounces of cocaine from a man named Rallin Huntley. Wold alerted a surveillance team and equipped himself with a body wire, cellular phone, gun, and $3,000 of cash from the BCA buy fund. Later that evening, Wold and the informant met Huntley in the parking lot of a St. Paul restaurant and then drove to a nearby bar where appellant joined them. Appellant directed Wold to drive to an apartment building down the street. Wold followed appellant and Huntley into the apartment building, down a hall, and into a stairwell. As Wold entered the stairwell, appellant began beating him in the face with a sap, a piece of leather filled with lead weights.

Wold shouted that he was a police officer to alert the surveillance team that he was in trouble. Appellant and Huntley continued to beat and kick Wold and appellant directed Huntley to take the cash from Wold's pocket. Wold then kicked appellant down some stairs and reached for his gun. Wold testified that appellant said to Huntley, "He's got a gun. There is nothing we can do now, man. Get the gun. We've got to do him." Wold believed that appellant and Huntley meant to kill him but fended off their attempts to get the gun until the surveillance team arrived and arrested them. Wold was treated at Ramsey County Medical Center and released. He suffered a swollen left eye, jaw, and nose, "knots" on his head, cysts on one hand, and a bruised back. The doctor testified that a sap could cause injuries leading to death.

On October 6, 1991, the day after appellant was arrested, he was charged with aggravated robbery and placed in a holding cell at Ramsey County Jail with 10 or 11 other men. Shortly afterwards, Michael Denny, a frequent informant for federal law enforcement agencies, was transferred from the Carlton County jail where he was doing time for shoplifting, to the Ramsey County jail so that he could get credit on his Carlton County sentence while he was in the Twin Cities assisting in a federal drug trial. Denny was placed in the holding cell with appellant and the other men. Denny testified that appellant asked if Denny was a BCA agent. Denny said he was not and asked why appellant wanted to know. Appellant replied that he "just got through kicking the shit out of one" and, when Denny pressed him for details, told Denny about the robbery and said he would have killed the agent if he had been able to get Wold's gun. Denny gave this information to the federal prosecutor and federal agents the next day and they arranged for Denny to tell his story to the BCA. Denny was not paid for the information.

On March 12, 1992, the state filed an amended complaint adding one count of attempted first degree murder. At a pretrial hearing, the trial court, on the state's objection as to relevancy, refused to admit part of defense witness Ronnie Watkins' testimony. Watkins, who was in the holding cell with appellant and Denny, was prepared to testify that a BCA agent tried to coerce him into corroborating Denny's story and that appellant did not tell anyone in the holding cell about the robbery or wanting to kill Wold. The trial court excluded the first part of Watkins' testimony, but allowed Watkins to testify at the hearing that he had not heard appellant make any incriminating statements

in the holding cell. Appellant did not call Watkins at trial.

## I.

■ Appellant first contends that the admission of incriminating statements he made to another inmate in a holding cell violated his right to counsel under the federal and state constitutions. The sixth and fourteenth amendments to the United States Constitution guarantee a criminal defendant the right to counsel. Once that right has attached, government agents are prohibited from "deliberately eliciting" incriminating statements from the defendant. *Massiah v. United States,* 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964). Both parties agree that appellant's right to counsel had attached by the time he was placed in the holding cell. The record shows that Denny deliberately elicited the incriminating statements from appellant. *See United States v. Henry,* 447 U.S. 264, 269–75, 100 S.Ct. 2183, 2186–89, 65 L.Ed.2d 115 (1980); *see also Massiah,* 377 U.S. at 206, 84 S.Ct. at 1203. Denny told appellant that he had been arrested for drugs, thus concealing the fact that he was an informant. The United States Supreme Court has held that a criminal defendant is "more seriously imposed upon" when "he [does] not even know that he was under interrogation by a government agent." *Massiah,* 377 U.S. at 206, 84 S.Ct. at 1203 (citation omitted). This is especially true when the defendant is confined and the agent appears to be "a person sharing a common plight." *Henry,* 447 U.S. at 274, 100 S.Ct. at 2189.

The record does not show, however, that Denny was a government agent for sixth amendment purposes. Appellant relies on *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) to argue that even if the state did not intentionally create the opportunity, the state knowingly exploited such an opportunity to confront the accused without the presence of counsel. In *Moulton,* however, there was no question that the informant was a government agent, the question was whether the state was responsible for the informant's deliberate elicitation of

incriminating statements when he had been instructed not to question the defendant.

More in point for our purposes here is *Kuhlmann v. Wilson,* 477 U.S. 436, 459, 106 S.Ct. 2616, 2629, 91 L.Ed.2d 364 (1985), where the court held that a defendant cannot establish a sixth amendment violation by showing that the state obtained incriminating statements "by luck or happenstance." Denny was an informant who deliberately elicited information from appellant, but he acted without direction, assistance, or encouragement from law enforcement authorities. Denny was not placed in the cell for the purpose of collecting information, he was not asked if he had heard anything, he came forward with the information voluntarily and was not paid or given jail credit for his testimony. Thus, it was only by happenstance that the state obtained appellant's incriminating statements. Because there is no evidence of police misconduct in obtaining incriminating statements made by appellant to another inmate in a holding cell, the admission of those statements into evidence did not violate appellant's sixth amendment right to counsel under the United States Constitution. It is unnecessary for us to address the state constitutional issue.

## II.

■ Appellant next claims that the trial court erred in excluding part of defense witness Ronnie Watkins' testimony. At the pretrial hearing, the defense called Watkins, an inmate who was in the holding cell with appellant and Denny, to testify that a BCA agent tried to coerce him into corroborating Denny's testimony. The state objected to the relevancy of this testimony. Defense counsel argued that the testimony was relevant because it made it more likely that the BCA had manufactured Denny's testimony.

■ The trial court excluded the evidence on the grounds that it was irrelevant and improper impeachment of Denny. The court explained that since there was no evidence that the BCA contacted Denny before Denny brought his information to the BCA's attention, there was no evidence of any opportunity to manufacture his testimony. Therefore, even if a BCA agent tried to coerce Watkins,

the court concluded, Watkins' testimony on this issue was irrelevant. A trial court can exclude irrelevant evidence. Minn.R.Evid. 402. Appellant points to the note the jury sent to the trial judge during deliberations stating that "we've got some people who think that M. Denny's testimony is a conspiracy." Clearly the jury was skeptical of Denny's testimony without the precluded impeachment testimony but had resolved the question before the judge had time to have Denny's testimony read back to them. We hold that the exclusion of part of the proposed testimony of a potential defense witness was not a clear abuse of discretion. *See State v. Kelly,* 435 N.W.2d 807, 813 (Minn. 1989). Nor was the exclusion of this part of Watkins' proposed testimony a violation of appellant's constitutional right to present a defense. At the pre-trial hearing Watkins was permitted to testify that while in the holding cell appellant did not talk about the robbery or his desire to kill Wold. This testimony could have supported a claim of lack of intent, but appellant chose not to call Watkins at trial.

## III.

■ Appellant argues that the prosecutor's comments during the opening statement and closing argument denied him a fair trial. After reviewing the record, we agree that the prosecutor improperly disparaged the role of defense counsel in general and of appellant's counsel in particular and improperly commented on appellant's failure to testify.

Though some of the prosecutor's comments were improper, they did not deny appellant a fair trial. There was overwhelming evidence of appellant's guilt and because the trial court's instructions—that the arguments of counsel were not evidence, that appellant was not required to prove his innocence, and that the jury should not, draw adverse inferences from the fact appellant did not testify—lessened the impact of the improper comments. In general, this court grants relief for plain error only if the error is prejudicial, however, "we have made it clear that if prosecutors persist in making improper statements * * * we will not hesitate, in an appropriate case," to grant a new

trial. *State v. Salitros,* 499 N.W.2d 815, 816 (Minn.1993). While we decline to exercise our supervisory power in this case, we once again remind prosecutors that we may reverse a conviction on the grounds of prosecutorial misconduct even where the misconduct was harmless.

## IV.

■ Finally, appellant argues that the aggravated robbery and attempted murder were part of a single behavioral incident and thus argues that his 216 month sentence for aggravated robbery should be vacated. We agree. To protect people convicted of multiple offenses from having the criminality of their conduct exaggerated, Minn.Stat. § 609.-035 (1992) prohibits multiple sentences for offenses that were committed as part of a single behavioral incident. *State v. Norregaard,* 384 N.W.2d 449, 449 (Minn.1986).

■ Whether two acts are part of a single course of conduct depends on the facts of the particular case. *Id.* When both offenses are intentional crimes, we consider the factors of time and place as well as whether the offenses were motivated by a desire to obtain a single criminal objective. *Id.* In this case, the robbery and attempted murder occurred at about the same time in the same place satisfying the first factor. As for the second factor, appellant argues that the state's evidence, if believed, shows that he had one criminal objective—to commit a robbery and get away with it. The state contends, however, that appellant had two separate criminal objectives—to take Wold's money and to kill him. To support this assertion, the state points to the comment appellant made when he saw Wold reach for his gun.

In a series of decisions, this court has held that "multiple sentences may not be used for two offenses if the defendant, substantially contemporaneously committed the second offense in order to avoid apprehension for the first offense." *State v. Gibson,* 478 N.W.2d 496, 497 (Minn.1991) (citations omitted). The state argues that Wold was in such a weakened condition that appellant could have escaped apprehension by slipping through the back door. The record, however, does not support this version of the facts. When ap-

pellant made the comment about needing to "do" Wold, Wold had just kicked appellant down some stairs and was reaching for a gun. Thus, contrary to the state's contention, appellant did not have an opportunity to make a safe escape.

Moreover, even if the attempted murder was not committed to escape apprehension, it was committed to facilitate the robbery, making the two crimes one course of conduct. *See State v. Naylor,* 474 N.W.2d 314, 322 (Minn.1991). This case is similar to *State v. Kutchara,* 350 N.W.2d 924 (Minn.1984), where we held that an aggravated assault and an attempted aggravated robbery were part of the same behavioral incident because the assault was committed in furtherance of the robbery. *Id.* at 928. The state argues that we should follow *State v. McAdoo,* 330 N.W.2d 104, 109 (Minn.1983), where the defendant received separate sentences for attempted robbery and assault because the record showed that he did not fire his gun to facilitate the commission of the crime or his escape, but fired it after making a decision to "get" the police. As explained above, this is not what happened in this case. Here, appellant's desire to get Wold's gun and "do" him appears to be motivated by the desire to complete the robbery and leave the scene without being harmed or apprehended.

The fact that there is no danger of disproportional punishment in this case because the 216 month sentence for aggravated robbery is a concurrent sentence that will make no difference in appellant's criminal history score calculation is not relevant to the issue of whether appellant's sentence is inconsistent with the intent of § 609.035. Under the facts and circumstances of this case, the aggravated robbery and the attempted murder were part of a single behavioral incident. The sentence for aggravated robbery is vacated.

We affirm the judgment of conviction and vacate the sentence for aggravated robbery.