STATE of Minnesota, Respondent,

v.

David WIPPER, Appellant.

No. C1–92–2569.

Supreme Court of Minnesota.

Feb. 11, 1994.

John Stuart, State Public Defender, Steven P. Russett, Asst. Public Defender, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Norman P. Coleman, Jr., Asst. Atty. Gen., St.

Paul, and Michael Scott Jesse, Benton County Atty., Foley, for respondent.

KEITH, Chief Justice.

Defendant, David Wipper, was found guilty by a district court jury of first-degree murder, Minn.Stat. § 609.185(3) (intentional murder in course of committing felony); two counts of second-degree murder, Minn.Stat. §§ 609.19(1) (intentional murder) and 609.-19(2) (unintentional murder in course of committing felony); and first-degree arson, Minn.Stat. § 609.561, subd. 1 (arson involving dwelling). The trial court sentenced defendant to a mandatory term of life in prison for first-degree murder and to a concurrent term of 68–months for first-degree arson, and also entered judgment of conviction for the two counts of second-degree murder. We affirm appellant's conviction and life sentence for first-degree murder; we affirm the conviction of first-degree arson but, pursuant to Minn.Stat. § 609.035, vacate the 68–month concurrent sentence for the offense; pursuant to Minn.Stat. § 609.04 and the state's concession of error, we vacate the convictions of second-degree murder, for which defendant received no sentence.

1. Defendant's first contention is that the state's evidence failed to establish that he was guilty of either first- or second-degree murder. We hold that the state's evidence was sufficient to support the verdict.

The victim was Clem Spiczka, a 71–year-old retired farmer who walked with a cane and had poor eyesight. Spiczka was last seen leaving the Country Tavern in Mayhew Lake Township in Benton County in the early morning hours of December 17, 1991, in the company of defendant, age 24, and his accomplice to the crime, defendant's cousin, 20–year–old Randy Wipper.

Spiczka's neighbors alerted the fire department of a fire at his house at 4:36 a.m. Firefighters, who found Spiczka's body, assumed he had died of smoke inhalation. No autopsy was conducted before he was buried.

The Benton County Sheriff began investigating Spiczka's death after receiving phone tips. Questioned by a deputy, defendant denied wrongdoing, saying basically that they had given Spiczka a ride home, had a beer with him in his house, then left.

The sheriff obtained an order and Spiczka's body was exhumed on December 26. An autopsy determined that Spiczka had died as a result of two gunshot wounds to the head before the fire.

Thereafter, deputies searched the house and surrounding area for shell casings, finding two. They also determined that there were two points of origin to the house fire.

Two detectives questioned defendant again on December 27. Defendant claimed his cousin, Randy Wipper, had shot Spiczka twice. Defendant said Randy had shot him through a window in the kitchen door, then had entered the house and shot him again. Later, on December 28, defendant admitted that he had set the fire.

Three witnesses testified at trial as to incriminating statements defendant made while in jail awaiting trial. One testified the defendant told him Randy fired both shots. A second testified he overheard defendant tell another inmate that he, defendant, had fired the second shot. A third testified that defendant at first told him that Randy had fired both shots but finally admitted he had fired the second shot and that they had killed Spiczka for his money.

In his testimony at trial, defendant said that Randy had told him before they took Spiczka home that he was going to take his money. Defendant testified that he thought this was "the booze talking" and that he did not take Randy seriously. He testified that, without warning, Randy had shot Spiczka with a .22 caliber rifle through the window on the front door, then had compelled him to fire a second shot. He testified that he thought Randy would shoot him if he did not comply with Randy's demand that he shoot Spiczka. He admitted that he suggested that they burn the house down and had set fire to the home in an attempt to cover up the killing.

The medical examiner testified that he could not identify which shot was fired first, but that either one would have killed Spiczka within minutes. Significantly, the examiner testified that Spiczka was still alive in the sense that his heart was still beating when the second shot was fired, although he would not have been breathing.

In similar cases we have said that it is the jury's task to listen to the available evidence and then, if possible, reconstruct what happened from the evidence. *State v. Slack*, 295 Minn. 518, 519, 202 N.W.2d 876, 877 (1972). Looking, as we must, at the evidence in the light most favorable to the jury's verdict, we conclude that the evidence was sufficient to support the jury's determination that defendant intentionally participated in the killing of Clem Spiczka in the course of committing a robbery.

■ 2. Defendant's next contention is that he was denied a fair trial by the manner in which the trial court instructed the jury. First, defendant contends that the trial court did not adequately instruct the jury on duress. Secondly, he contends that the manner in which the trial court submitted the verdict forms may have affected the order or procedure which the jury followed in considering the possible verdicts, thereby invading the province of the jury. Our review of the record satisfies us that, viewed as a whole, the trial court's instructions were accurate and comprehensible, did not misinform the jury about the defense of duress, and did not invade the province of the jury or confuse the jury.

■ 3. Defendant also contends that the trial court erred in failing to instruct the jury that the alleged accomplice to the crime, Randy Wipper, had invoked his Fifth Amendment privilege, that Randy was therefore unavailable as a witness for either party and that the jury should not draw any adverse inference against defendant from Randy's failure to testify.

There are cases arguing both sides of the issue of whether a cautionary instruction of some sort, if requested, should be given in this situation. Compare, *People v. Dyer*, 425 Mich. 572, 390 N.W.2d 645, 651 (1986) (cautionary instruction that jury should not draw adverse inference from the absence of a witness should be given when requested by either party), with *United States v. St. Michael's Credit Union*, 880 F.2d 579, 597–98 (1st Cir.1989) (trial court should say nothing about the matter). *Cf., State v. Swain*, 269 N.W.2d 707, 716 (Minn.1978) (prohibiting defense comment on state's failure to call witness available to both sides).

Defendant in this case requested that the jury should "somehow be informed as to the reason for" Randy Wipper's nonappearance, but defendant did not specifically request that the trial court instruct the jury that it could not draw an adverse inference against either side from the assertion of the privilege. The state argues that defendant did not ask for a no-adverse inference instruction because the defense *wanted* the jury to draw an adverse inference, specifically, that the one person who had personal knowledge that might support defendant's claim that he was coerced into shooting Spiczka was unavailable to testify.

Without deciding whether a trial court should give such an instruction in an appropriate case when requested, we hold that the trial court in this case did not abuse its discretion or commit prejudicial error in failing to give such an instruction.

■ 4. Defendant contends, the state concedes, and we agree that, under Minn. Stat. § 609.04, defendant is entitled to have his convictions of the lesser offenses of second-degree intentional murder and second-degree felony murder vacated. Under Minn. Stat. § 609.04 a defendant may not be convicted twice for the same offense or for one offense and a lesser-included offense on the basis of the same criminal act. Here defendant stands convicted of first-degree murder for the killing of Spiczka. His conviction of two lesser forms of murder on the basis of the same act may not stand under section 609.04. We therefore vacate those two convictions.

■ 5. Defendant also contends that while he was properly convicted of arson, he is entitled to have the sentence for that offense vacated pursuant to Minn.Stat.

§ 609.035. That statute generally forbids punishing a defendant for more than one offense committed as part of a so-called single behavioral incident. The statute protects a defendant against concurrent sentences as well as consecutive sentences. *State v. Hagen,* 275 N.W.2d 49, 51 (Minn.1979). Defendant contends that since the offense of arson was committed contemporaneously with the murder and for the purpose of escaping apprehension for the murder, the prohibition of section 609.035 applies. The trial court, however, relied upon the multiple victim exception to the statutory prohibition against multiple punishment. *Compare Langdon v. State,* 375 N.W.2d 474, 476 (Minn.1985) (multiple victim exception does not allow imposition of multiple sentences where defendant committed four burglaries in taking money from coin boxes in laundry rooms in four different apartment buildings that were a part of a single complex owned and operated by same party or entity), *with State v. Mendoza,* 297 N.W.2d 286, 288 (Minn.1980) (upholding, under multiple victim exception, sentences of defendant for attempted robbery of victim and for assault of officer who tried to question defendant). In this case the trial court based its reliance on the exception on the fact that Spiczka owned his house jointly with his two brothers. The trial court reasoned that since the murder victim's brothers were also victims of the arson, it was not improper to punish defendant for both offenses even though the arson was committed by defendant and his accomplice in an attempt to avoid apprehension for the murder. We vacate the 68–month concurrent sentence for the arson conviction. This, of course, will have no effect on the amount of time defendant actually will serve in prison, since he remains subject to a term of life in prison.

Conviction and life sentence for first-degree murder affirmed; convictions of second-degree murder vacated; conviction of arson affirmed, but 68–month sentence for arson vacated.