STATE of Minnesota, Respondent,

v.

Thomas Joseph BOOKWALTER,
petitioner, Appellant.

No. C7–93–366.

Supreme Court of Minnesota.

Dec. 8, 1995.

John M. Stuart, Minnesota State Public Defender, Marie L. Wolf, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Margaret H. Chutich, Asst. Atty. Gen., St.

Paul, James Reuter, Chisago County Atty., Center City, for respondent.

OPINION

ANDERSON, Justice.

Defendant, Thomas Joseph Bookwalter, was charged by complaint with seven criminal offenses. He pleaded guilty to two counts of criminal sexual conduct in the first degree, kidnapping, and theft of a motor vehicle. After a trial, the jury returned a verdict finding Bookwalter guilty of attempted first-degree murder, attempted second-degree murder, assault in the second degree, assault in the third degree, aggravated robbery and simple robbery. A third count of criminal sexual conduct was dismissed by the court. A sentencing hearing was held and the court imposed three consecutive sentences—for attempted murder in the first degree, criminal sexual conduct in the first degree, and kidnapping. On appeal, Bookwalter challenged the sentences imposed by the court.

The Minnesota Court of Appeals held that the trial court did not err by imposing multiple sentences for attempted murder and criminal sexual assault and by imposing those sentences consecutively, but the court of appeals did conclude that the trial court erred by imposing the kidnapping sentence consecutively and remanded for resentencing on the kidnapping offense. Bookwalter appeals, maintaining that the trial court may not impose multiple sentences for the attempted murder and the criminal sexual conduct. We affirm.

On May 12, 1992, at approximately 9:20 p.m. in Stacy, Minnesota, complainant left her home to go to work. She was driving her full conversion van. Complainant stopped on her way to work to buy gas for the van at a service station located approximately one block from her home. After complainant paid for the gas, she returned to the van and drove to County Road 19 where she headed east.

Complainant drove east on County Road 19 for approximately five miles to the intersection of County Road 19 and County Road 77. She turned south on County Road 77, toward Chisago City, Minnesota. While complainant drove, she felt something touch her left leg, brushed it away, and then thought that she saw something behind her. Complainant believed that she was alone in the van, but as she started to turn her head to look behind her, defendant, Thomas Joseph Bookwalter, who was in the back of the van, commanded, "Don't turn around." Bookwalter, who at the time was living with his sister in a home near that of complainant, had been in the back of the van since complainant left her home. He would later testify that he had originally entered the van looking for property to steal. Complainant obeyed Bookwalter's command, faced forward, and continued driving.

Bookwalter next instructed complainant to turn the van around in a driveway located on the right-hand side of the road. Complainant begged Bookwalter to let her out of the van, saying, "Please let me out. You can take the van." Bookwalter responded, "You want to have sex?" Complainant continued driving, now heading north on County Road 77. Upon arriving once again at the intersection of County Road 77 and County Road 19, complainant followed Bookwalter's instruction and headed west on County Road 19. While she was driving, Bookwalter fondled one of complainant's breasts and also tried to put his penis in one of her hands. In an attempt to signal another driver for help, complainant stopped the van by slamming on the brakes and flashed the van's headlights several times. But complainant's signal attempt was unsuccessful. Complainant told Bookwalter that she would not move until one of them got out of the van. Bookwalter, who was holding a knife, responded that he would let complainant go if she drove to an area where no cars were around.

Complainant drove approximately a mile to a mile and a half farther down County Road 19, at which point Bookwalter instructed her to turn right onto an isolated dirt road named Ivywood Trail. After complainant turned onto Ivywood Trail, Bookwalter in-

structed her to turn the van into the first driveway and to turn it around. After complainant finished turning the van around, she followed Bookwalter's instruction and stopped the van.

Complainant again asked Bookwalter to let her out, but Bookwalter took the keys from the ignition and pulled complainant to the back of the van, where he sexually assaulted her. During the attack, Bookwalter penetrated complainant's vagina with both his penis and his fingers. He also had oral sex with her and touched her breasts with his hands and mouth. After the sexual assault, complainant attempted to put her clothes back on. Bookwalter pushed her down and told her not to dress. Nevertheless, complainant continued to put on her clothes. Bookwalter would later testify that it was during the ride in the van when he got the idea to sexually assault complainant.

Bookwalter then sat in the driver's seat of the van and began driving down Ivywood Trail, back toward County Road 19. Complainant moved to the van's sliding side door intending to jump out of the van while it was moving, but Bookwalter prevented her escape by grabbing the back of her shirt while he drove. At about that point, complainant discovered Bookwalter's knife on the floor of the van. She picked up the knife and told Bookwalter that she would stab him if he did not let her out of the van; but complainant could not bring herself to stab him, and they grappled briefly over the knife. During the struggle, Bookwalter momentarily lost control of the van, causing it to go into the ditch, but he was able to regain control and to drive the van out of the ditch. Bookwalter stated again that he would release complainant when no cars were around, and he turned the van onto County Road 19. As Bookwalter drove the van heading west on County Road 19, complainant told him that she wanted to get out immediately. Bookwalter continued to drive for approximately a mile and a half to two miles and eventually stopped the van.

Bookwalter then moved toward complainant, who was still in the back of the van, and asked her for the knife. She refused to give the knife to him. After they briefly scuffled for possession of the knife, complainant

threw the knife out the van's sliding side door, which had been opened during the scuffle. Bookwalter then commanded complainant to get out of the van by the side door, but complainant insisted on exiting through the driver's side. As complainant stepped out of the van on the driver's side, she collapsed to the pavement. Bookwalter pulled complainant back onto her feet, and according to complainant, Bookwalter then told her that he was going to kill her.

Bookwalter forcefully led complainant to the edge of some woods that were located approximately 20 feet from the van. He then pulled complainant another 25 to 30 feet into the woods. Bookwalter began choking complainant, but she was able to knock him away. Complainant fell to the ground after Bookwalter attempted to choke her in various ways. After complainant fell to the ground, Bookwalter punched her twice on the side of her head. He then began hitting her head several times with a stick that he had found in the woods, repeatedly telling her to "shut up." Complainant put her face into the ground, covered her head with her arms, and did not respond to Bookwalter because she wanted him to believe that she was dead. Bookwalter hit complainant until she was quiet, and at that point, returned to the van and drove to Stacy where he abandoned the van. Complainant managed to walk to the home of an acquaintance, who then called the police and an ambulance.

Bookwalter was charged with kidnapping, criminal sexual conduct in the first degree, attempted first-degree premeditated murder, attempted second-degree intentional murder, assault in the second and third degree, aggravated robbery, simple robbery and theft of a motor vehicle. He was allowed to plead guilty to kidnapping, criminal sexual conduct in the first degree, and theft of a motor vehicle, leaving for jury decision the question whether he attempted to kill complainant when he attacked her in the woods or "merely" committed some less serious crime or crimes such as assault and robbery. Both Bookwalter and the state claimed that Bookwalter's conduct in the woods was for the purpose of facilitating an attempt to escape and avoid apprehension for kidnapping and

sexual assault. Bookwalter testified that he did not intend or attempt to kill complainant. He also testified that he took her into the woods so that he could get away. He denied trying to choke her and claimed that he hit her with the stick only to get her to stop screaming. The state, however, argued to the jury that defendant tried to kill complainant in order to avoid apprehension for the sexual assault.

Bookwalter was convicted of and sentenced for kidnapping, criminal sexual assault in the first degree and attempted murder. The trial court imposed three consecutive sentences—240 months for murder in the first degree, 86 months for criminal sexual conduct in the first degree, and 48 months for kidnapping. At the sentencing hearing, the trial court judge stated that "these are different behavioral incidents," and that Bookwalter "formed a separate, independent intent which was to commit murder, and proceeded to attempt to execute that intent." The judge also stated the motivation for the attempted murder never became clear, and that the judge understood it was Bookwalter's position that he never intended to kill the complainant.

■ In an unpublished opinion, the Minnesota Court of Appeals held that the trial court did not err by imposing multiple sentences for the two offenses of criminal sexual conduct and attempted murder and held that the trial court did not abuse its discretion in imposing these sentences consecutively because it found the acts of criminal sexual conduct had been committed with particular cruelty. Because the record failed to show confinement of the complainant beyond that connected with the attempted murder and criminal sexual conduct offenses, the court of appeals held that the trial court erred by imposing a consecutive sentence for the kidnapping offense and remanded for resentencing on the kidnapping offense. Bookwalter appeals, claiming that under the facts and circumstances of this case, Minn.Stat. § 609.035 (1992) and the avoidance-of-apprehension doctrine prohibit the trial court from imposing multiple sentences for the criminal sexual conduct and the attempted murder.

I.

Minnesota Statutes section 609.035 contains two types of protection for criminal defendants, one against serialized prosecution, the other against multiple punishment. *State v. Johnson*, 273 Minn. 394, 400, 141 N.W.2d 517, 523 (1966). The present case concerns the protection against multiple punishment. The statute provides:

### CRIME PUNISHABLE UNDER DIFFERENT PROVISIONS.

Except as provided in sections 609.251, 609.585, 609.21, subdivisions 3 and 4, 609.2691, and 609.856, if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them. All the offenses, if prosecuted, shall be included in one prosecution which shall be stated in separate counts.

Minn.Stat. § 609.035 (1992).

■ The purpose of this statute is "to limit punishment to a single sentence where a single behavioral incident result[s] in the violation of more than one criminal statute." Minn.Stat.Ann. § 609.035 advisory committee cmt. (West 1987).[1] Thus, if a defendant commits multiple offenses against the same victim during a single behavioral incident, Minn. Stat. § 609.035 provides that the defendant may be sentenced for only one of those offenses. *See, e.g., State v. Herberg*, 324 N.W.2d 346, 348 (Minn.1982); *State v. Zuehlke*, 320 N.W.2d 79, 82 (Minn.1982). Multiple punishment "refers not to multiple convictions but multiple sentences and any multiple sentences, including concurrent sentences, are barred if section 609.035 applies." *State v. Boley*, 299 N.W.2d 924, 925 (Minn.

---

1. The statute was designed to legislatively overrule cases such as *State v. Winger*, 204 Minn. 164, 282 N.W. 819 (1938), which held that, even though the defendant had already been acquitted of the crime of rape, double or former jeopardy did not preclude the state from again prosecuting the defendant for the crime of carnal knowledge based on the same act and on the same facts. *See* Minn.Stat.Ann. § 609.035 advisory committee cmt. (West 1987).

1980).[2] The statute thereby ensures that punishment is commensurate with the crime committed. *Effinger v. State,* 380 N.W.2d 483, 488 (Minn.1986); *State v. Reiland,* 274 Minn. 121, 125, 142 N.W.2d 635, 638 (1966).

There are a number of express exceptions to the multiple punishment bar. These exceptions are set forth in the statute. Thus, if a person commits a burglary, the person generally may be punished both for the burglary and for the most serious crime committed in entering or while in the burgled building. Similarly, if, as occurred in this case, a person commits a kidnapping, the person generally may be punished both for the kidnapping and for the most serious crime committed during the course of the kidnapping. Another exception, based upon our interpretation of the legislative intent as expressed in the wording of the statute, generally allows multiple sentencing if there were multiple victims, as long as the imposition of multiple sentences does not unfairly exaggerate the criminality of the defendant's conduct. *State v. Norris,* 428 N.W.2d 61, 70 (Minn.1988).

But the prohibition against multiple punishment contained in Minn.Stat. § 609.035 applies only if the multiple offenses arose out of a single behavioral incident. Whether multiple offenses arose out of a single behavior incident depends on the facts and circumstances of the particular case. *State v. Hawkins,* 511 N.W.2d 9, 13 (Minn. 1994); *Reiland,* 274 Minn. at 124, 142 N.W.2d at 637. Among the factors to be considered in determining whether two offenses arose out of a single behavioral incident are "the singleness of purpose of the defendant and the unity of time and of place of the behavior." Minn.Stat.Ann. § 609.035 cmt. by Maynard E. Pirsig (West 1987).

In this case, we deal directly with the statute's protection against multiple punishment. If the statute applies, then under the express terms of the statute, Bookwalter may be sentenced for the kidnapping and for one, but not more than one, of the other offenses committed as part of the same behavioral incident, i.e., for either the attempted murder or the sexual assault, but not both.

The seminal case interpreting Minn.Stat. § 609.035 is *State v. Johnson,* 273 Minn. 394, 141 N.W.2d 517 (1966). In *Johnson,* this court formulated a workable test to be used in determining whether two intentional offenses arose out of a single behavioral incident. We have recited and applied this test in numerous cases.[3] Formulating the test, this court emphasized that, "apart from the factors of time and place, the essential ingredient of any test is *whether the segment of conduct involved was motivated by an effort to obtain a single criminal objective.*" 273 Minn. at 404, 141 N.W.2d at 525 (emphasis in original). Therefore, to determine if the offenses arose from a single behavioral incident, we generally consider the factors of time and place and whether a defendant is motivated by a single criminal objective in committing two intentional crimes. For example, when arson is the means by which the defendant commits a murder, the defendant may not be sentenced both for the murder and for the arson, because the time and place of the offenses coincide and because the defendant is motivated by an effort to obtain a single criminal objective. *See id.,* 273 Minn. at 403, 141 N.W.2d at 524 (citing *Neal v. State,* 55 Cal.2d 11, 9 Cal.Rptr. 607, 611, 357 P.2d 839, 843 (1960)).[4]

---

**2.** Minnesota Statute section 609.04 generally governs the question of whether multiple convictions, as opposed to multiple sentences, are permitted.

**3.** *See, e.g., Effinger,* 380 N.W.2d at 483; *Langdon v. State,* 375 N.W.2d 474, 476 (Minn.1985); *State v. Zuehlke,* 320 N.W.2d 79, 81–82 (1982); *State v. Krampotich,* 282 Minn. 182, 186, 163 N.W.2d 772, 776 (1968).

**4.** *Cf. State v. Hartfield,* 459 N.W.2d 668, 670 (Minn.1990) (holding that defendant's conviction of burglary and defendant's conviction of rape arose out of single behavioral incident because "[t]he purpose of the burglarious entry was to rape the victim"); *State v. Norregaard,* 384 N.W.2d 449, 450 (Minn.1986) (concluding that it would be inconsistent with the purpose of Minn. Stat. § 609.035 to allow separate punishment both for assault and for aggravated robbery where the assault is what transformed what would otherwise have been a simple robbery into an aggravated robbery).

But if the factors of time and place are not coincidental and a defendant is not motivated by a single criminal objective in committing two intentional crimes, then generally the defendant may be sentenced for both crimes. For example, if a defendant murders a victim in executing a premeditated plan, and then, as an afterthought, steals the victim's car immediately after the murder, a single common criminal objective fails to underlie the murder and the theft of the car. *Effinger,* 380 N.W.2d at 488–89. Consequently, the defendant may be sentenced both for the crime of murder and for the crime of unauthorized use of a motor vehicle. *See also State v. Krampotich,* 282 Minn. 182, 187, 163 N.W.2d 772, 776 (1968) (holding that offenses of unauthorized use of a motor vehicle, simple robbery, simple assault and aggravated assault did not arise out of a single behavioral incident because, in contrast to the situation in which each crime is part of a "prearranged program of events," the defendants committed the offenses "simply * * * as an idea came into defendants' heads"); *Reiland,* 274 Minn. at 124–25, 142 N.W.2d at 637–38 (holding that offense of driving after revocation of driver's license did not arise out of the same behavioral incident as the negligent driving offense because the conduct constituting each offense did not result from a single common criminal objective).

In the present case, Bookwalter's crimes of criminal sexual conduct and attempted murder are both intentional crimes. *See* Minn. Stat. §§ 609.17, 609.342, subd. 1(c), (d), (e) (1992); *State v. Lindahl,* 309 N.W.2d 763, 766–67 (Minn.1981). Accordingly, the test formulated in *State v. Johnson* directs the court to evaluate the unity of time and place between the sexual assault and the attempted murder and to evaluate whether Bookwalter's conduct in committing the two crimes was motivated by an effort to obtain a single criminal objective.

The facts of the present case clearly reveal that Bookwalter's sexual assault of complainant and his attempt to murder her occurred at two distinct times and places. The divisibility of both time and place is evinced by the sequence of events involved with the crimes. Bookwalter had complainant drive the van to a secluded area and then sexually assaulted her in the back of the van. After the assault, he took control of the van and drove it to a different location. While driving the van, he pushed complainant down when she attempted to dress, but nevertheless complainant was able to dress herself. Complainant was able to gain possession of Bookwalter's knife and they struggled over possession of the knife. Bookwalter made numerous promises to free complainant when no cars were around, but did not do so and, in fact, grabbed her by her shirt when she attempted to escape from the moving van after she had succeeded in opening the side door. Once he had stopped the van, Bookwalter again struggled with complainant for possession of the knife. After the struggle, complainant exited the van and fell to the pavement. Bookwalter pulled complainant to the edge of some woods that were located approximately 20 feet away from the van. He then pulled complainant another 25 to 30 feet into the woods. Once in the woods, Bookwalter attempted to murder complainant by choking her in various ways and by repeatedly beating her with a stick that he had found in the woods. This sequence of events demonstrates the divisibility of the sexual assault and the attempted murder, in both time and in place, and is a significant factor supporting the conclusion that the two crimes did not arise out of a single behavioral incident.[5]

Further, it is clear that the two offenses did not arise out of a single behavioral incident because a single common criminal objective fails to underlie both offenses. Although the focus of the statute is primarily on the defendant's conduct rather than the elements

5. *Cf. Zuehlke,* 320 N.W.2d 79 (holding that two offenses arose out of a single behavioral incident, emphasizing that both offenses were committed inside the car); *Krampotich,* 282 Minn. at 182, 163 N.W.2d at 772 (holding that several crimes were not part of a single behavioral incident where, although all the crimes occurred during the same evening, the period extended two and a half hours, and although all the crimes occurred

of the crimes committed,[6] it is meaningful to recognize that the two crimes involve separate intents, with the crime of attempted murder requiring the specific intent to kill and criminal sexual conduct in the first degree requiring the general intent to sexually penetrate the victim. Minn.Stat. §§ 609.17, 609.342, subd. 1(c), (d), (e); *see Lindahl,* 309 N.W.2d at 766–67 (holding that criminal sexual conduct requires general intent to sexually penetrate).

Beyond the elements of the offenses, the record reveals and the trial court concluded that Bookwalter's crimes were not part of a premeditated plan or prearranged program of events. Bookwalter admitted that he had originally entered complainant's van looking for something to steal. He testified that he decided to sexually assault complainant only after she entered the van, drove to the service station, purchased gas, and resumed driving on her way to work. The sexual assault was not a necessary prelude to any other crime. Instead, the sexual assault was an end in itself. No evidence exists in the record to suggest that Bookwalter's perverse sexual impulses motivated his attempt to murder complainant.[7] After Bookwalter sexually assaulted complainant, he told complainant that he would release her when no cars were around. He further testified that he could have dropped complainant off in town. Instead, he stopped the van in an area where he saw no homes and where it was "very, very dark." Bookwalter testified that when he stopped the van, he intended to get out; however, as an apparent afterthought, he decided to murder complainant. *Cf. Effinger,* 380 N.W.2d at 483; *Krampotich,* 282 Minn. at 187, 163 N.W.2d at 776.

In summary, based upon the facts and circumstances of this case, which show events

disparate as to time, place and criminal objective, we are satisfied that the multiple sentencing of Bookwalter for criminal sexual conduct and attempted murder does not unfairly exaggerate the criminality of his conduct and is not barred by the statute.

## II.

■ Bookwalter further contends that he may not be sentenced for both the sexual assault and for the attempted murder because he attempted to murder complainant substantially contemporaneously with the sexual assault in an effort to avoid being apprehended for the sexual assault. Bookwalter asserts that the facts and circumstances of his case mandate a determination that the attempted murder was committed in order to avoid apprehension for the contemporaneously committed sexual assault and therefore, based upon well-established case law in Minnesota, the offenses are part of the same behavioral incident and only one sentence may be imposed. We disagree. Where a defendant's second offense is committed in an attempt to avoid apprehension for the first offense, an analysis similar to that set forth in *State v. Johnson* is required to determine whether the offense committed in avoidance of apprehension was "substantially contemporaneous" or was a "single behavioral incident" with the first offense. *Hawkins,* 511 N.W.2d at 9, 13; *State v. Gibson,* 478 N.W.2d 496, 497 (Minn.1991).

As noted in numerous earlier cases, the determination of whether there is a "single behavioral incident" or whether the offenses were committed "substantially contemporaneously" turns on the particular facts and circumstances of each case and the resolution is not always simple. In *State v. Murphy,*

---

in or by the victim's automobile, the automobile itself was moved from place to place).

**6.** *See Johnson,* 273 Minn. at 400, 141 N.W.2d at 522 (recognizing that "any test for applying the statute was clearly intended to emphasize the 'person's conduct' rather than the offenses committed").

**7.** *Cf. State v. Scott,* 304 N.W.2d 296 (Minn.1981) (allowing multiple sentences for conviction of criminal sexual conduct in the first degree and for soliciting another person to practice prostitu-

tion, even though the sexual conduct was to further the goal of getting person to practice prostitution, because the defendant had a separate motivation to commit each offense); *Herberg,* 324 N.W.2d at 349 (holding that two incidents of first-degree criminal sexual conduct committed against the same victim, separated by both time and place, arose out of a single behavioral incident because the defendant's motivation underlying both incidents was "to satisfy his perverse sexual needs").

380 N.W.2d 766 (Minn.1986), we held that there was sufficient evidence for the jury to conclude that defendant murdered his victim "while" he was raping her for purposes of the felony-murder rule, Minn.Stat. § 609.185(2) (1974), where the evidence indicated he killed the victim immediately following the rape to cover his crime.

> This killing falls within the same continuous criminal act as the rape and thus falls within the scope of our felony-murder statute.

380 N.W.2d at 771.

On the other hand, in *State v. Stevenson*, 286 N.W.2d 719 (Minn.1979), we held that even though both offenses involved coerced sexual intercourse and occurred in the same general place, the five-hour time separation and lack of relationship between the two offenses rendered each a separate crime for purposes of sentencing. We note that if the second offense in *Stevenson* had been committed for the purpose of avoiding apprehension, the same analysis would have applied and in all likelihood we would not consider it to have been committed "substantially contemporaneously" with the first offense. It, too, would have constituted a separate crime for purposes of sentencing.

In *Hawkins*, we held that an attempted murder which occurred at about the same time and in the same place as a robbery, and where the defendant did not have an opportunity to make a safe escape and leave the scene without being harmed or apprehended, was committed for the purpose of avoiding apprehension. Accordingly, the attempted murder and the robbery constituted a single behavioral incident and the defendant was afforded the protection of the statute. 511 N.W.2d at 13–14.

Given the multiplicity and disjointed nature of events between the sexual assault and the attempted murder—factors that formed the basis of our conclusion that the sexual assault and attempted murder were not one behavioral incident—the facts here are more analogous to those in *Stevenson* than those in *Murphy* and *Hawkins*. We have already concluded that the disparity of time and place based on the sequence of events in this case is sufficient to preclude determination of a single behavioral incident. We note that Bookwalter's testimony indicates that, unlike the defendant in *Hawkins*, he had numerous opportunities to make a safe escape. Further, the trial court noted that Bookwalter's motivation for the attempted murder never became clear. Accordingly, we conclude that the attempted murder was not substantially contemporaneous with the sexual assault nor did it constitute part of a single behavioral incident. The trial court may therefore impose multiple sentences on Bookwalter for the crimes of attempted murder and criminal sexual conduct. The matter is remanded in the kidnapping matter in conformity with the court of appeals' decision.

Affirmed.

COYNE, Justice (dissenting).

I respectfully dissent. This is a relatively uncomplicated case involving the application of a settled, long-standing doctrine, the so-called "avoidance-of-apprehension doctrine." Pursuant to that doctrine, if a criminal defendant "substantially contemporaneously" commits one crime in order to avoid apprehension for another crime against the same victim, then under Minn.Stat. § 609.035 (1992) the defendant may be sentenced for only one of the two offenses unless one of the statutory exceptions, referred to by the majority, applies.

*State v. Hawkins*, 511 N.W.2d 9 (Minn. 1994) is illustrative of the doctrine. In that case defendant and an accomplice decided to "rip off" an undercover narcotics officer who arrived at a predetermined location with $3,000 in cash to buy narcotics from them. The men began beating the officer as part of their plan to take the money from him. In order to alert a surveillance team, the officer shouted that he was a police officer. When the officer reached for his gun, defendant said, "He's got a gun. There is nothing we can do now, man. Get the gun. We've got to do him." The officer fended off the attempts by defendant and his accomplice to get his gun until the surveillance officers arrived and arrested them. The defendant was convicted of aggravated robbery for taking the money from the officer's pocket and

of attempted first-degree murder for attempting to get the gun and kill the officer. The trial court sentenced the defendant to concurrent prison terms of 240 months for the attempted murder (the statutory maximum) and to 216 months for the aggravated robbery. The court of appeals affirmed the sentences, but we vacated the aggravated robbery sentence. We based this both on the fact that the attempted murder was "committed in furtherance" of the aggravated robbery and on the fact that the attempted murder was committed to help the men escape apprehension for the aggravated robbery. As we put it, "[defendant's] desire to get [the officer's] gun and 'do' him appears to [have been] motivated by the desire to complete the robbery and leave the scene without being harmed or apprehended." 511 N.W.2d at 14.[1]

There are two issues in this case relating to the application of the avoidance-of-apprehension doctrine. The first is whether defendant committed the attempted murder to avoid apprehension for the rape. This is partly a factual question, on which the state has the burden of proof. *State v. Kemp*, 305 N.W.2d 322, 326 (Minn.1981). *State v. Zuehlke*, 320 N.W.2d 79, 82 (Minn.1982). In view of the way in which this case was tried and submitted to the jury, it is clear both as a factual and as a legal matter that defendant's attempt to kill the complainant cannot be explained without necessary reference to the fact that he had just raped the complainant. *See State v. Banks*, 331 N.W.2d 491, 494 (Minn.1983). As the prosecutor's closing argument and the defendant's testimony clearly demonstrate and as the majority concedes, this case was tried by both the state and the defendant on the theory that the defendant attempted to kill the complainant in order to avoid apprehension for the rape. To put it another way, the state did not even attempt to prove that the defendant's at-

tempt to prevent his victim from identifying him was a separate behavioral incident. On the evidence before it and guided by the face the prosecutor put on that evidence, it is clear that when it found the defendant guilty of attempted first-degree murder, the jury found that the defendant tried to kill the complainant in an effort to avoid being identified as the rapist and, thus, to avoid apprehension for the rape.

The second question relating to the application of the avoidance-of-apprehension doctrine to the facts of this case is whether it may be said that defendant committed the rape and the attempted murder "substantially contemporaneously."

At the one extreme, obviously if defendant had choked the complainant and attempted to kill her while in the act of raping her, it would be easy to conclude that he committed the two crimes "substantially contemporaneously." *State v. Hawkins, supra,* clearly supports this conclusion. At the other extreme, it seems obvious that if defendant had released the complainant and then later attempted to kill her in order to silence her, it would be easy to conclude that he did not commit the two crimes "substantially contemporaneously" and that therefore the two crimes were not committed as part of a single behavioral incident.

The difficulty in some cases in making the determination of whether two crimes are committed "substantially contemporaneously" in the context of Minn.Stat. § 609.035 is illustrated by comparing our decision in *State v. Stevenson,* 286 N.W.2d 719 (Minn.1979), with our decision in *State v. Herberg,* 324 N.W.2d 346 (Minn.1982). In *Stevenson* the defendant committed two crimes involving coerced sexual intercourse with the same 15–year–old girl. Both offenses occurred in the same general place and on the same day but the offenses were separated by a period of

1. Relevant decisions recognizing and applying the doctrine include, *State v. Gibson,* 478 N.W.2d 496 (Minn.1991); *Effinger v. State,* 380 N.W.2d 483 (Minn.1986); *State v. Beito,* 332 N.W.2d 645 (Minn.1983); *State v. Banks,* 331 N.W.2d 491 (Minn.1983); *State v. Gilbertson,* 323 N.W.2d 810 (Minn.1982); *State v. Zuehlke,* 320 N.W.2d 79 (Minn.1982); *State v. Boley,* 299 N.W.2d 924 (Minn.1980); *Matter of Castillo,* 293 N.W.2d 839 (Minn.1980); *State v. White,* 292 N.W.2d 16 (Minn.1980); *State v. Armell,* 281 N.W.2d 709 (Minn.1979); *State v. Finn,* 295 Minn. 520, 203 N.W.2d 114 (1972). *See also State v. Wipper,* 512 N.W.2d 92 (Minn.1994) (vacating a concurrent sentence for arson committed by a defendant to avoid apprehension for the murder of the occupant of a house).

five hours and the two offenses did not bear any essential relationship to each other. We held that under these circumstances section 609.035 did not bar the imposition of two consecutive terms.

On the other hand, in *Herberg*, the defendant twice raped the same victim but the first rape was separated from the second by an interval during which defendant drove the victim to a different location so that he could accomplish the second offense without detection. We held, *inter alia*, that under section 609.035 the trial court could sentence the defendant for one rape, not two.

In deciding whether the attempted murder in this case was committed "substantially contemporaneously" with the rape, it must be remembered that we do not decide appeals in a jurisprudential vacuum. What we decide today in a particular context is influenced by prior decisions in different but related contexts and may bear on future decisions in different but related contexts.

Specifically, in deciding whether defendant committed the attempted murder "substantially contemporaneously" with the rape, we must bear in mind that our decision is influenced by (a) our prior decisions dealing with the issue of substantial contemporaneousness in the context of the prosecution of a defendant for attempted first-degree murder or completed first-degree murder in the course of committing the felony offense of rape and (b) the possible effect of our decision on future prosecutions for attempted first-degree murder or completed first-degree murder in the course of committing the offense of rape.

Formerly, in order to obtain a conviction of attempted first-degree murder or completed first-degree murder, the state had to prove premeditation. However, when the legislature adopted the Criminal Code of 1963 it provided that the state need not prove pre-

meditation if it could prove that the defendant attempted to kill or killed the victim "while" raping the victim. *See* Minn.Stat. Ann. § 609.185 advisory committee cmt. (West.1987).[2] This raised the issue of whether a defendant could be convicted of attempted first-degree murder or completed first-degree murder if, after raping the victim, the defendant attempted to kill or killed the victim in order to conceal the rape or in order to avoid apprehension for the rape. Courts in other jurisdictions were split on this general issue. *See* Annot., What Constitutes Termination of Felony for Purpose of Felony–Murder Rule, 58 A.L.R.3d 851, § 27 (1974). We decided the issue in *State v. Murphy*, 380 N.W.2d 766 (Minn.1986). There the defendant forced a young woman into an alley at knifepoint late one night, raped her, then decided to kill her. In an opinion by Chief Justice Amdahl, we upheld the defendant's conviction of first-degree murder in the course of raping her, stating:

> In Minnesota, the felony-murder rule is applicable where the 'felony and the killing * * * are parts of one continuous transaction.' *Kochevar v. State*, 281 N.W.2d 680, 686 (Minn.1979). In this case, defendant killed [the victim] immediately following the rape to conceal his crime. This killing falls within the same continuous criminal act as the rape and thus falls within the scope of our felony-murder statute.

380 N.W.2d at 771. In a footnote we added:

> Most jurisdictions that recognize the felony-murder doctrine support the view that a killing by one trying to escape from or conceal a felony where there has been no break in the chain of events between the felony and the killing is within the scope of the felony-murder rule. [Citations omitted]. Thus, even though the underlying felony may be complete, the felony-murder rule may still apply. [Citations omitted].

---

**2.** The current version of Minn.Stat. § 609.185 (1994) provides:

 Whoever does any of the following is guilty of murder in the first degree and shall be sentenced to imprisonment for life:

  \*   \*   \*   \*   \*   \*

 (2) causes the death of a human being while committing or attempting to commit criminal

sexual conduct in the first or second degree with force or violence, either upon or affecting the person or another \* \* \*.

Minn.Stat. § 609.184, subd. 2 (1994) now provides that the trial court shall sentence a person to life imprisonment "without possibility of release" if the person is convicted of first-degree murder under section 609.185(2).

*Id.* at n. 3. Had the state done so, I think it highly unlikely that this court would have reversed that conviction on the ground that the rape and the attempted murder were not parts of a single behavioral incident either because attempted murder requires an intent to kill while rape requires an intent to sexually penetrate or because the rape and the attempted murder were not substantially contemporaneous. That the appellant assured his victim that he would release her when there were no cars around does not, in my opinion, convert his search for a secluded area where defendant could murder her and conceal her body into a behavioral incident separate from the rape. It seems to me that all that occurred after the rape itself, was intended to enable defendant to permanently escape apprehension.

Because it seems to me that the defendant could have been prosecuted successfully for attempted first-degree murder in the course of raping his victim, pursuant to Minn.Stat. §§ 609.17 and 609.185(2) (1992), on the theory that the rape and the attempted killing were part of one continuous transaction—an unbroken chain of events—I believe that, by application of the same standard, Minn.Stat. § 609.035 precludes the trial court from imposing two separate sentences on the theory that the two offenses were not committed as part of one continuous transaction or one unbroken chain of events.

In summary, the state, which has the burden of proof on the issue for purposes of section 609.035, not only failed to establish that the two offenses were committed as two separate behavioral incidents, the state tried the case on the theory that defendant's conduct constituted one continuous behavioral incident—that he attempted murder in order to avoid apprehension for his crimes. Under the circumstances, I believe that, in addition to sentencing defendant for kidnapping, the trial court could sentence defendant for the rape or the attempted murder but not both. The state should not be permitted to have it both ways any more than should the defendant.

Here the maximum sentence that could be imposed for the attempted murder was the statutory maximum of 240 months, whereas the maximum sentence that could be imposed for the rape was 300 months or 25 years.[3] The presumptive sentence for the rape, given defendant's criminal history score of six, was 158 months. Because defendant committed the rape in a particularly serious way, our cases support the conclusion that the trial court could have doubled the presumptive sentence up to the statutory maximum. Here, the statutory maximum is 300 months. Since the trial court clearly wanted to impose a sentence at least that long, I believe that the appropriate disposition in this case would be to remand to the trial court, with the trial court free on remand to impose a 300–month statutory maximum sentence for the rape. *See,* among other decisions, *Herberg,* 324 N.W.2d 346, 350. This would amount to a limited reduction of 26 months, or just over 16 months in actual time the defendant would have to spend in prison, assuming good behavior, from the sentence that remained after the court of appeals' decision.

It seems to me that the majority, in order to keep this defendant in prison 16 months longer, not only has confused the heretofore clear law relating to Minn.Stat. § 609.035, the avoidance-of-apprehension doctrine, and the meaning of "substantially contemporaneous," but also has made the prosecution of first-degree felony murder in the commission of a rape extremely difficult.

For the foregoing reasons I would reverse with respect to the sentence for attempted murder and rape and remand for resentencing pursuant to Minn.Stat. § 609.035 (1992).

KEITH, Chief Justice (dissenting).

I join in the dissent of Justice COYNE.

PAGE, Justice (dissenting).

I join in the dissent of Justice COYNE.

**3.** The 1992 legislation, not applicable to this case, has increased the statutory maximum for the rape to 360 months or 30 years. 1992 Minn. Laws, ch. 571, art. 1, § 14, subd. 2.